UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TLALOC MUNOZ, an individual; MIGUEL RUIZ, an individual; EDGAR CORONA, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EARTHGRAINS DISTRIBUTION, LLC a Delaware limited liability company; BIMBO BAKERIES USA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 22-cv-1269-AJB-AHG<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>**(Doc. No. 9)** |

Before the Court is a motion to compel arbitration, brought by Earthgrains Distribution, LLC ("Earthgrains") and Bimbo Bakeries ("Bimbo") (collectively, "Defendants"), in this civil action for alleged labor and employment violations brought by Tlaloc Munoz ("Munoz"), Miguel Ruiz ("Ruiz"), and Edgar Corona ("Corona") (collectively, "Plaintiffs"), on behalf of a putative class. (Doc. No. 9.) Plaintiffs filed a

response, to which Defendants replied. (Doc. Nos. 11, 12.) For the reasons set forth below, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

Plaintiffs are former independent distributors of baked goods for Defendants. Plaintiffs allege that they, and other members of the putative class, were misclassified as independent contractors, rather than employees, and were therefore denied certain rights and protections guaranteed by the California Labor Code.

Plaintiffs each entered into Distribution Agreements with Earthgrains, a subsidiary of Bimbo, to purchase exclusive rights to sell and distribute certain baked goods to stores, institutions, and restaurants within specified geographic areas in California. Each Distribution Agreement contains Article 13, the Dispute Resolution Provision ("DRP"), which provides that the parties agreed to arbitrate all "Covered Disputes." (Doc. No. 9-2 at 26.) Covered Disputes is defined in the DRP, in relevant part, as:

> any and all Disputes between DISTRIBUTOR and BAKERY, including claims arising out of or in any way relating to this Agreement and claims relating to any assertion of any employment relationship . . . between DISTRIBUTOR . . . and BAKERY . . . including . . . wage and hour and/or wage payment claims.

(*Id.* at 27.) The DRP further states that Plaintiffs waive the right to bring any action, whether in court or in arbitration, on a class action basis. (*Id.* at 27–28.)) It also provides that the arbitration agreement "shall be governed by the Federal Arbitration Act (the 'FAA') and the law of the Commonwealth of Pennsylvania to the extent that Pennsylvania law is not inconsistent with the FAA."[1] (*Id.* at 26.)

---

[1] The Court acknowledges that Corona's DA differs from the others in that its choice of law provision does not identify Pennsylvania as the governing law, but rather, states that the arbitration agreement shall be governed by the FFA "and the law of the state in which the Dispute arose." (Doc. No. 9-2 at 96.) This difference, however, is inconsequential to the outcome of the case, as demonstrated below.

Along with the Distribution Agreement, Plaintiffs received Franchise Disclosure Documents, which contained an Addendum for the State of California. The Addendum, states:

> The Distribution (Franchise) Agreement requires application of the laws of Pennsylvania. This provision may not be enforceable under California law.
> . . .
> The Distribution (Franchise) Agreement requires that all disagreements be resolved by binding arbitration . . . The arbitration will occur at a location in or near the county in which you operate under the Distribution (Franchise) Agreement. . . . This provision may not be enforceable under California law.

(Doc. No. 11-1 at 5.)

Defendants filed a motion to compel arbitration pursuant to the parties' Distribution Agreements. Plaintiffs contest the validity of the arbitration provision. This Order follows.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

In deciding a motion to compel arbitration, the FAA limits the court's power to determining "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). To determine whether a valid agreement exists, district courts apply applicable state law principles of contract formation. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

## III. DISCUSSION

As previously mentioned, Defendants seek to enforce the arbitration provision in the parties' Distribution Agreements. Plaintiffs argue that the DRP is invalid because there was no mutual assent, and its terms are unconscionable. The Court discusses the arguments in turn.

### A. Mutual Assent[2]

An enforceable contract requires mutual assent, or a meeting of the minds, between the parties. *Knutson*, 771 F.3d at 565. Otherwise stated, the parties must "all agree upon the same thing in the same sense." Cal. Civ. Code § 1580; *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006). Whether mutual assent exists is determined by objective criteria, "the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (internal quotation marks and citation omitted).

---

[2] The parties' moving papers indicate there is no consequential difference between the application of Pennsylvania and California laws to this case as both provide similar contract principles concerning mutual assent and unconscionability. In any event, as will be explained in this section and incorporated herein, there was no meeting of the minds between Plaintiffs and Defendants that Pennsylvania law would govern the arbitration agreement, and the Court finds the choice-of-law provision unenforceable for the same reasons it finds the arbitration agreement unenforceable. *See Winter v. Window Fashions Pros., Inc.*, 166 Cal. App. 4th 943, 950 (2008) (holding "no meeting of the minds" on the choice-of-law provision because of franchise circular's advisement that it "may not be enforceable under California law). Accordingly, the Court applies California contract law to determine the DRP's validity.

Plaintiffs assert that the discrepancy between the Distribution Agreement and the Addendum establish that, at the time of signing, there was no mutual assent to the arbitration clause. In support, Plaintiffs point to the following language in the Addendum.

> **The Distribution (Franchise) Agreement requires that all disagreements be resolved by binding arbitration** . . . The arbitration will occur at a location in or near the county in which you operate under the Distribution (Franchise) Agreement. . . . **This provision may not be enforceable under California law.**

(Doc. No. 11-1 at 5 (emphasis added).)

Defendants argue it would be improper for the Court to consider the Addendum because it is not part of the Distribution Agreement, and the Distribution Agreement includes an integration clause. (Doc. No. 9-1 at 16.) While the parole evidence rule generally prohibits consideration of extrinsic evidence to alter or add to the terms of an integrated writing, it "does not bar extrinsic evidence 'where the validity of the agreement is the fact in dispute.'" *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 958 (9th Cir. 2013) (internal alterations omitted) (quoting Cal. Code Civ. Proc. § 1856(f)). Such is the case here. The parties dispute the DRP's validity, and the Addendum is relevant to the issue because it contains information Plaintiffs were presented with at the time they signed the Distribution Agreement. Thus, the Court rejects Defendants' contention that the Addendum may not be considered.

Instructive here, the Ninth Circuit in *Laxmi Investments, LLC v. Golf USA*, 193 F.3D 1095, 1096 (9th Cir. 1999), considered a franchise agreement that was preceded by a "Franchise Operating Circular" which read: "The Franchise Agreement also requires binding arbitration . . . [in the] State of Oklahoma. This provision may not be enforceable under California law." Due to the contradictory terms in the Circular and the Franchise Agreement, the *Laxmi* court held that the franchisees "had no reasonable expectation that it had agreed to a forum other than California." *Id.* at 1097. It thus found the forum selection clause unenforceable for lack of mutual assent. *Id.*

Since *Laxmi*, courts have continued to find an absence of mutual assent where a document disclaims the enforceability of the contract provision itself. *See, e.g.*, *Winter v. Window Fashions Professionals, Inc.*, 166 Cal. App. 4th 943, 945 (2008) (affirming the trial court's holding that "there was no meeting of the minds as to the Agreement because of the advisement in the [Franchise Circular] that the provision may not be enforceable under California law."); *Nygaard v. Property Damage Appraisers, Inc.*, No. 16-CV-02184-VC, 2017 WL 1128471, at *1 (E.D. Cal. Mar 23, 2017) (California contract law "finds mutual assent lacking when a provision in the contract disclaims its own enforceability.").[3]

The arbitration provision at issue here suffers the same fate. The Distribution Agreement and Addendum were presented to Plaintiffs altogether and are, on their face, contradictory of each other. The Distribution Agreement contains the mandatory arbitration provision, and the Addendum states, "This provision may not be enforceable under California law." (Doc. Nos. 9-2 at 26; 11-1 at 5.) Applying *Winter*, *Laxmi*, and *Nygaard*, the Court finds there was no meeting of the minds as to the arbitration agreement because the Addendum expressly disclaims its enforceability in California. Plaintiffs, as California residents, thus had no reasonable expectations that they agreed to binding arbitration. There being no mutual assent to the DRP, the Court finds it unenforceable.

Defendants' reliance on *Meadows v. Dickey's Barbeque Restaurants Inc.*, 144 F. Supp. 3d 1069 (N.D. Cal. 2015) is unavailing. There, the plaintiffs signed a Franchise Agreement accompanied by a Franchise Disclosure Document ("FDD"). *Id.* at 1073. The Franchise Agreement contained a Texas choice-of-law provision, and the FDD contained a disclaimer that read: "The franchise agreement requires application of the laws of Texas. This provision may not be enforceable under California law." *Id.* at 1081. In addition to,

---

[3] The Ninth Circuit affirmed the district court's decision in *Nygaard*, explaining that it was bound to apply the California Court of Appeal's decision in *Winter*, which found no meeting of the minds in a case with "the same language at issue [in that case]—a venue selection clause containing the phrase '[t]his provision may not be enforceable under California law'". *Nygaard v. Prop. Damage Appraisers, Inc.*, 779 F. App'x 474, 476 (9th Cir. 2019).

and immediately preceding, the FDD was a table listing the important provisions of the Franchise Agreement and a state cover page—both of which reiterated Dickey's intention to apply Texas law. *Id.* In distinguishing *Winters* and enforcing the choice-of-law provision, the *Meadows* court explained that the two additional representations "[made] clear that [the franchisor] would insist on the application of Texas law." *Id.*

Similar circumstances are not present here. In *Meadows*, the court pointed out not only the information in the table and in the state cover page, but also, how clearly the information was presented to the plaintiffs. Here, Plaintiffs were not provided with a separate table identifying the arbitration provision as important to the Distribution Agreement. And although Plaintiffs received a state cover page to the Franchise Disclosure Documents, the sentence about binding arbitration is not readily identifiable from the rest of the text. (Doc. No. 11-1 at 8.) To be sure, the sentence appears in all caps, but the same is true for nearly all the words on the page. Additionally, the sentence appears in the middle of the page and is not distinguishable in font style or size from the surrounding text. The Court thus finds the lack of state cover page here differs from the one in *Meadows* in consequential respects. Overall, Plaintiffs were not presented with additional and clear representations that Defendants would insist on applying the arbitration clause. *Meadows* is therefore not controlling here.

Based on the foregoing, the Court finds there was no meeting of the minds between Plaintiffs and Defendants on mandatory arbitration. *See Knutson*, 771 F.3d at 565. Consequently, the DRP is not a valid agreement to arbitrate in this case. Accordingly, the Court **DENIES** Defendants' motion to compel arbitration on this basis.

### B.   Unconscionability

Plaintiffs contend that even if the Court were to find that the Distribution Agreement was validly formed, the Distribution Agreement is unenforceable on grounds of unconscionability. (Doc. No. 11 at 17.) Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."

*AT&T Mobility*, 563 U.S. at 339. For a court to exercise its discretion not to enforce a contract clause under the doctrine of unconscionability, "procedural and substantive unconscionability must *both* be present", but "they need not be present in the same degree" and are evaluated on "a sliding scale." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000) (internal alterations omitted) (emphasis in original).

### 1.     Procedural Unconscionability

A determination of procedural unconscionability is focused on elements of "oppression and surprise." *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 176 (2015). The oppression element "arises from an inequality of bargaining power," while the surprise element "involves the extent to which the terms of the bargain are hidden." *Id.*

#### a)     Oppression

"Oppression" generally entails a contract of adhesion. *The McCaffrey Group, Inc. v. Superior Court*, 244 Cal. App. 4th 1330, 1348 (2014). Adhesion contracts are standardized, preprinted forms that are offered by the party with superior bargaining power on a "take-it-or-leave-it basis" and are often indicative of procedural unconscionability. *Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462, 474 (2020). In *Ali*, the court found an imbalance in bargaining power between the plaintiffs, who were independent-contractor truck drivers, and the defendant, who was the employer corporation. *Id.* This imbalance, coupled with the fact that the arbitration agreement was a standardized, preprinted, nonnegotiable form was sufficient to "demonstrate significant oppression." *Id.* (citation omitted).

Here, Defendants are part of "the world's largest baking company" and "generated nearly $11 billion in sales" in 2015. (Doc. No. 11 at 19.) Plaintiffs Munoz, Ruiz, and Corona typically work for hourly wages in blue collar jobs and have not completed a college degree. (*Id.*) Defendants drafted and presented the Distribution Agreement to all Plaintiffs. (Doc. No. 9-1 at 8.) As with the parties in *Ali*, Defendants' sophistication as a

billion-dollar corporation significantly overshadows the weaker position of Plaintiffs as workers and demonstrates an imbalance in bargaining power. Moreover, Plaintiffs had no opportunity to negotiate the terms of the Distribution Agreement; it was presented to them as a standardized, preprinted form.

In *OTO, LLC v. Kho*, the court highlighted the dangerous potential for oppression in preemployment arbitration agreements due to "the economic pressure exerted by employers on all but the most sought-after employees . . . and [because] few employees are in a position to refuse a job because of an arbitration requirement." 8 Cal. 5th 111, 127 (2019). There is no indication here that Plaintiffs are highly sought-after such that they had negotiating leverage or the ability to refuse a job because of an arbitration requirement. *See id.*

The Court classifies the Distribution Agreement as an adhesion contract based on the imbalance of bargaining power between Plaintiffs and Defendants, and the presentation of the Distribution Agreement as a standardized, preprinted, nonnegotiable form. *See Ali*, 59 Cal. App. 5th at 474. As a contract of adhesion, the Court finds the Distribution Agreement to be oppressive in nature.

### b) Surprise

Surprise is "a function of the disappointed reasonable expectations of the weaker party." *Higgins v. Superior Ct.*, 140 Cal. App. 4th 1238, 1252 (2006) (citing *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)); *see Oto*, 8 Cal. 5th at 126 (holding that a provision that is beyond the reasonable expectations of the weaker party, generates surprise). Showing surprise involves the extent to which the disputed terms are hidden in a prolix printed form that was drafted by the party seeking to enforce the disputed terms. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

Here, the Distribution Agreement and the Addendum present conflicting terms as to the DRP's enforceability. (Doc. No. 11 at 8.) As discussed *supra* § III.A, despite the discrepancy, Defendants did not clarify their intention to enforce the arbitration agreement through a table listing important provisions in the Distribution Agreement, clear and readily

identifiable terms on the state cover page, or any other means. It was thus not reasonably ascertainable to Plaintiffs whether the terms of the Distribution Agreement or the terms of the Addendum would govern any future disputes with Defendants. Because Defendants' attempt to enforce the DRP is beyond the reasonable expectations of Plaintiffs, the weaker party, it constitutes surprise. *See Higgins*, 140 Cal. App. 4th at 1251.

Additionally, the DRP is Article 13 of the Distribution Agreement and buried towards the latter half of the 34-page document. (Doc. No. 9-2 at 96.) Although Article 13 appears in bold font, so too do all the other articles—making it challenging to distinguish the section from the rest. Additionally, there is no requirement for the signor to separately sign or initial the arbitration terms. For these reasons, the Court finds that the DRP is "hidden within a prolix printed form" causing surprise to Plaintiffs and supporting a determination of unconscionability. *Scissor-Tail, Inc.*, 28 Cal. 3d at 820; *see also Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 3d 1145, 1152 (N.D. Cal. 2013), *aff'd*, 601 F. App'x 461 (9th Cir. 2014) (procedural unconscionability supported where the "arbitration clause appears in paragraph twenty of twenty-three paragraphs [and] … it does not require a separate signature").

For the above stated reasons, the DRP presents elements of oppression and surprise, and is therefore procedurally unconscionable. *See Serafin*, 235 Cal. App. 4th at 176.

### 2. Substantive Unconscionability

"The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287–88 (2016) (internal quotation marks and alterations omitted).

Plaintiffs first argue that the DRP is substantively unconscionable due Article 13.2, providing a short time period in which disputes must be noticed, and Article 13.4, providing an automatic waiver of all disputes that do not comply with the notice requirement. Article

13.2 provides, in pertinent part, "the party initiating the Dispute must provide written notice . . . within sixty (60) calendar days of the date on which facts respecting the Dispute first come to the party's attention."[4] (Doc. No. 9-2 at 96.) Article 13.4 states that a failure to provide written notice "is deemed to be a full and complete waiver of such dispute . . . regardless of merit." (*Id.*)

Here, Plaintiffs' claims are based on a variety of alleged labor code violations that are covered by limitations periods ranging from one to four years. Although the notice provision applies equally to Plaintiffs and Defendants, the Court finds that a limitations period of only sixty days is unduly harsh and a factor supporting substantive unconscionability in this case. *See Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282 (2004) (shortened limitations period of 180 days supports finding of substantive unconscionability); *Samaniego v. Empire Today,* LLC, 205 Cal. App. 4th 1138, 1143 (2012) (shortened limitations period of six months supports finding of substantive unconscionability). Furthermore, the claims at issue here are unwaivable rights protected by California Labor Code. *See e.g., Gentry v. Superior Court*, 42 Cal. 4th 443, 454 (2007) (holding that overtime and minimum wages are unwaivable statutory rights); *Franco v. Athens Disposal Co., Inc.*, 171 Cal. App. 4th 1277, 1289 (2009) (meal and rest periods unwaivable); *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007) (expense reimbursement under section 2802 unwaivable).

Defendants argue that the Court should employ a higher threshold for unconscionability, and in support, cites *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016) and *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038 (9th Cir. 2001). These cases, however, are inapposite because they consider limitations periods that are significantly longer than the 60-day limitations period here (one year in *Tompkins* and six months in

---

[4] The Court acknowledges that unlike Article 13.2 of Corona's Distribution Agreement, Article 13.2 of Munoz's and Ruiz's Distribution Agreement specifies 30 days, not 60 days. Because the Court finds a 60-day limitations period unconscionable in this case, it necessarily would find the same for a 30-day limitations period.

*Soltani*). Tellingly, Defendants offer no case where a court has upheld a shortened 60-day limitations period. And the Court has found none. Considering the strikingly short limitations period and types of claims Plaintiffs bring, the Court finds the DRP's limitations period unreasonable and unduly harsh, and thus, substantively unconscionable.

Next, Plaintiffs raise the unconscionability of Article 13.11, which requires Plaintiffs to pay Defendants "liquidated damages in the amount of $10,000" if a court determines Plaintiffs have "breached this Article by attempting to prosecute a Covered Dispute in a forum other than arbitration." (Doc. No. 9-2 at 99.) Not only is the tone of this provision harsh and threatening, but it also does not require Defendants to pay any amount in damages to Plaintiffs if Defendants are found to have done the same. (*Id.*) There is not even a modicum of bilaterality in Article 13.11. *See Armendariz*, 24 Cal. 4th at 87. The language used in this provision and the lack of reciprocity make clear Defendants drafted it to intimidate Plaintiffs and prevent them from challenging the arbitration clause and pursuing their rights. Consequently, the Court finds this provision overly harsh, unduly oppressive, and unfairly one-sided. *See Magno.*, 1 Cal. App. 5th at 287–88.

Also demonstrating a lack of mutuality are Article 13.6 "Covered Disputes" and Article 13.7 "Excluded Disputes." As Plaintiffs note, the excluded disputes include claims that are more likely to be brought by Defendants, while the covered disputes include claims that are more likely to be brought by Plaintiffs. On one hand, covered disputes include claims regarding the Distribution Agreement, employment status, and alleged harassment, discrimination, and/or retaliation. On the other hand, excluded disputes include claims regarding Defendants' intellectual property and proprietary business information. These provisions further demonstrate that Defendants have drafted the Distribution Agreement to require Plaintiffs to arbitrate without meaningfully accepting the same terms for themselves. "Although lack of mutuality does not always render such an agreement invalid, there must be a business reality to justify the lack of mutuality; there must be a modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 87. Defendants, however, present no argument or evidence to demonstrate business realities to justify the unilaterality of the provisions.

For these reasons, the Court finds that, taken together, Article 13.6 and Article 13.7 impose terms that are unduly oppressive and unfairly one-sided, and thus are unconscionable. *See Magno*, 1 Cal. App. 5th at 287–88.

* * *

Overall, because the DRP provides only a 60-day limitations period, imposes a $10,000 liquidated damages charge only against the weaker party to prevent them from challenging the arbitration agreement, and unfairly excludes from arbitrability claims Defendants are likely to bring while covering those Plaintiffs are likely to bring, the Court finds the DRP is substantively unconscionable. Accordingly, based on the foregoing, the Court finds the DRP presents elements of both procedural and substantive unconscionability, and is thus unenforceable.

### C. Severability

The existence of more than one unconscionable provision does not necessarily render severance of the offending provisions impossible. *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 454 (2020). However, when the arbitration agreement is so riddled with improper terms that it demonstrates an intention of the stronger party to use the inferior forum of arbitration to their own advantage, then simply severing the offending provisions would only "encourage drafters to overreach." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005 (9th Cir. 2021); *Armendariz*, 24 Cal. 4th at 129; *Murphy v. Check 'N Go of Cal., Inc.*, 156 Cal. App. 4th 138, 149 (2007), *abrogated on other grounds by Iskansian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (two unconscionable terms sufficient to render entire agreement unenforceable).

As previously discussed, the DRP contains multiple unconscionable provisions that significantly hinder Plaintiffs' ability to bring claims against Defendants, imposes a hefty financial burden on Plaintiffs alone, and excludes from arbitration those claims most likely to be brought by Defendants. The Court find these circumstances demonstrate an intent to force a weaker party into unfair arbitration. As such, the Court finds that Defendants, as

drafters of the Distribution Agreement, overreached in the DRP. To discourage future exploitation of weaker parties, the Court declines to sever the unconscionable provisions and finds the entire DRP unenforceable. *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (declining to sever unenforceable arbitration provisions, noting that doing so "would allow an employer to draft one-sided agreements and then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance").

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendants' motion to compel arbitration is **DENIED**. (Doc. No. 9.)

**IT IS SO ORDERED**.

Dated:  September 13, 2023

Hon. Anthony J. Battaglia
United States District Judge