**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs,
TLALOC MUNOZ, MIGUEL RUIZ, EDGAR CORONA,
and STEVEN SNAVELY, on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

TLALOC MUNOZ, an individual; MIGUEL RUIZ, an individual; EDGAR CORONA, an individual; STEVEN SNAVELY, an individual, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

EARTHGRAINS DISTRIBUTION, LLC a Delaware limited liability company; BIMBO BAKERIES USA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No. 3:22-cv-01269-AJB-AHG

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**

**(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, § 221-223];**

**(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**

**(4) FAILURE TO PAY OVERTIME [LAB. CODE, § 510];**

**(5) FAILURE TO PROVIDE MEAL PERIODS [LAB. CODE, § 226.7];**

**(6) FAILURE TO PROVIDE REST BREAKS [LAB. CODE, § 226.7];**

**(7) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.];**

**REPRESENTATIVE ACTION FOR:**

**(8) ENFORCEMENT OF THE PRIVATE ATTORNEYS GENERAL ACY, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ*.**

**DEMAND FOR JURY TRIAL**

TLALOC MUNOZ, MIGUEL RUIZ, EDGAR CORONA, and STEVEN SNAVELY (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendants EARTHGRAINS DISTRIBUTION, LLC, a Delaware limited liability company, and BIMBO BAKERIES USA, INC., a Delaware limited liability company (collectively "Bimbo" or "Defendants"), and DOES 1 through 100, inclusive, and alleges on information and belief as follows:

**INTRODUCTION**

1. Defendants operate a direct store delivery baking business which involves baking products and agreeing to deliver and merchandize these products at their retail customers' stores. To carry out the delivery and merchandizing obligations owed to its customers, Bimbo obtains the services of "Distributors" like Plaintiffs and the putative class who service retail locations in their designated geographic territories. Distributors order the right volume of Bimbo products for the stores they service, deliver the products, and ensure proper merchandizing (i.e., rotating product to ensure shelves are stocked and pulling older, stale product from the stores).

2. Distributors are a core component of the direct store delivery model operated by Bimbo. They are also heavily controlled by Bimbo in carrying out their work. Yet, Bimbo claims they are not employees and instead "independent contractors."

3. By refusing to recognize Distributors as employees, Bimbo cheats these individuals out of protections provided by California labor laws such as overtime pay and reimbursement of business expenses. Bimbo's misclassification of Distributors also robs the State of important employee tax revenue and gives Bimbo an undue advantage over law-abiding competitors who bear the necessary expenses associated with employing similar workers.

4. This Class Action seeks recovery for violations of California's Labor Code and Industrial Welfare Commission Wage Order No. 1 ("Wage Order 1") along with violations of California's Unfair Competition Law predicated upon violations

of California's Labor Code and Wage Order 1. Plaintiffs also pursue penalties for violating the Labor Code and Wage Orders pursuant to California's Private Attorneys General Act ("PAGA") on behalf of Plaintiffs and other similarly situated Distributors in California.

**JURISDICTION & VENUE**

5. This Court has subject matter jurisdiction to hear this case because the damages and penalties sought herein resulting from Defendants' conduct exceeds the jurisdictional minimum of this Superior Court.

6. Venue is proper pursuant to Code of Civil Procedure, section 395.5, among other sections. The obligation to comply with the Labor Code for the group of workers relevant to this case and the resulting liability for misclassifying and denying Labor Code/Wage Order benefits to those workers arose in this County, among others. Defendants hire many Distributors in San Diego who are misclassified and denied employment benefits. This, in turn, creates exposure for PAGA penalties which arise here in this County. Defendants are not residents of this state.

**PARTIES**

7. Mr. Munoz is and at all relevant times was a resident of California. He worked as a Distributor for Defendants from 2014 through 2019.

8. Mr. Ruiz is and at all relevant times was a resident of California. He worked as a Distributor for Defendants from 2014 through 2019.

9. Mr. Corona is and at all relevant times was a resident of California. He worked as a Distributor for Defendants from 2017 until approximately January 2022.

10. Mr. Snaveley is a resident of California that is a current Distributor for Defendants.

11. Earthgrains Distribution, LLC is a Delaware limited liability company with a principal business address at 255 Business Center Drive, Horsham, PA 19044.

12. Bimbo Bakeries USA, Inc. is the parent company. It is a Delaware corporation with the same principal address.

13. Plaintiffs do not know the true names and/or capacities, whether individual, partners, or corporate, of the Defendants sued herein as DOES 1 through 100, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiffs will seek leave to amend this Complaint when the true names and capacities of these Defendants have been ascertained. Plaintiffs are informed and believe and thereon allege that these Defendants are responsible in whole or in part for Plaintiffs' alleged damages.

14. At all times mentioned, Defendants were the agents, alter egos, servants, joint venturers, joint employers, or employees for each other. Defendants acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. All conduct was ratified by Defendants, and each of them.

## GENERAL ALLEGATIONS

### A. Defendants' Misclassify Distributors as "Independent Contractors" and Not Employees Under California Law

*1. Defendants Operate a Baking Business*

15. Earthgrains Distribution, LLC and its predecessors including Sara Lee have operated a baking business and distributed baked goods since 1928. Earthgrains' current parent company is Bimbo Bakeries, USA, Inc., the largest baking business in the United States. In turn, Bimbo's parent is Grupo Bimbo, one of the largest baking businesses in the world. Bimbo and Earthgrains produce and distribute food items ranging from fresh and frozen bread, bagels, and English muffins to candies and other snack food items.

16. Bimbo's products include Sara Lee bread, Thomas bagels and muffins, Little Bites snacks, and Ball Park buns and rolls. https://www.bimbobakeriesusa.com/our-brands.

17. Bimbo distributes its products through a Direct Store Delivery ("DSD") network. Under its DSD model, it has over 20,000 workers that "work every day in

bakeries, sales and distribution centers, on routes and in support functions to ensure our products are on store shelves every day." https://www.bimbobakeriesusa.com/about-us. Bimbo's retail customers making up its DSD network include grocery stores like Vons, Ralphs, and El Super.

### B. Defendants' Control Distributors Who Carry Out Integral Parts of Their Baking Business

18. As part of Bimbo's DSD network, Earthgrains sells distribution territories to "Distributors" like the named Plaintiffs and the class they seek to represent. Earthgrains labels Distributors "independent contractors" and "franchisees." Earthgrains sells these work opportunities to Distributors who in turn distribute designated bakery products as part of Bimbo's Direct Store Delivery ("DSD") network. In short, these Distributors carry out a central part of Bimbo and Earthgrains' DSD network: the delivery, stocking, and rotating of products to Bimbo's retail customers. Specifically, Distributors are responsible for:

a. Maintaining an adequate and fresh supply of Product to all retail customers in their territory;

b. Rotating products before they become stale;

c. Promptly removing all stale product from retail locations;

d. Cooperating with Defendants' marketing programs;

e. Selling and distributing products in a manner that enhances Defendants' reputation and goodwill;

f. Supporting secondary displays and utilizing Defendants' point-of-sale materials;

g. Satisfying customer requirements, guidelines and expectations including service frequency requests, service windows, promotions, merchandising and weekly inventories;

h. Abiding by "good industry practice" as Defendants may define those practices from time to time;

i. Conducting work in a professional, honest, ethical and safe manner and ensuring;

j. Cooperating with Defendants in the event of a product recall, withdrawal, recovery, or similar retrieval.

19. In turn, Defendants can and do review Distributors' performance and enforce these terms and conditions. Failure to appropriately service Defendants' customer accounts is a material breach and gives Defendants the right to terminate Distributors. Defendants may also terminate Distributors if there are "chronic breaches" of the Distributor Agreement, if Distributors act in a manner that threatens public health or safety, if Distributors act in a way that harms Defendants' reputation, or if the Distributor engages in dishonest or criminal behavior.

20. Distributors must pick up and deliver fresh bakery products to the customers in their territories five days per week; the other two days – Wednesday and Sunday – Distributors remain obligated to visit customer stores to ensure products are properly stocked and rotated.

21. Distributors must meet customer service requirements which Earthgrains imposes on them. These include delivery window times (i.e., what time to drop and deliver fresh product), dress/uniform requirements, and others. Still further, Defendants impose requirements like "good industry practices" that Distributors are contractually bound to follow. This allows Defendants to impose the level of control they need to run their business and keep their customers happy.

22. Distributors are also obligated to order sufficient products to meet the needs of the retail stores that they service. Defendants set the price of the products that the Distributors "buy" from Defendants and the resale price that the retail customers "pay Distributors" for the products. In reality, this is a simple margin or commission arrangement, and the retail customers pay Defendants for the products (not Distributors). In turn, Defendants remit the margin or commission payment earned by the Distributor on the sale.

23. Earthgrains and Bimbo employee managerial employees like district and regional managers that oversee the work being done by Distributors. They also hire workers to perform the same role as Distributors when a territory has not been sold or is otherwise vacant. In short, Bimbo and Earthgrains owe their retail customers obligations and they will ensure those obligations are met either through a Distributor or on their own.

24. While Distributors are obligated to fully service the retail accounts in their geographic territory, they are forbidden from selling outside of the territory.

25. Defendants reserve the right to control and modify the list of products that Distributors have the right to sell to the retail stores in their territories as well. Distributors may sell only those products authorized by Defendants to their retail stores. They may not, for example, sell competing goods into the retail stores. Nor may they offer their products to stores outside of their territory.

26. Defendants also control Distributors' earnings in that they set the "margin" or "spread" – the difference between the price Defendants set for the Distributor and the price Defendants set with their retail customers for the product. For example, Defendants will determine that a category of bread products has a 20 percent margin which would mean Defendants charge the Distributor $1.60 for a loaf of bread that it charges its customers $2.00. Thus, the Distributor earns 20 percent of the customer sales as a commission or piece rate wage.

27. Defendants also have the unilateral power to set "stale caps" or the like on the amount of returned product they will accept. Anything exceeding these caps will be charged to the Distributor which essentially passes the risk of stale, damaged, or lost product to the Distributor.

## CLASS ALLEGATIONS

28. Pursuant to FRCP Rule 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated members of the Class, defined

below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

29. **Class Period.** The Class Period shall be defined as: from four years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

30. Plaintiffs seek to represent the following Class of persons:

a. All individuals during the Class Period who personally operated an Earthgrains or Bimbo territory, i.e., a "Distributor," in California and who were not classified as employees (the "Class").

b. This Class does not include Defendants, their officers, and/or their directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

31. Plaintiffs reserve the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

32. **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiffs are informed and believe that there are over one hundred individuals meeting the Class definition. Defendants have access to data sufficient to identify the members of the Class, namely their list of Distributors maintained internally and used as part of their franchise filings with various states each year.

33. **Adequacy of Representation.** The named Plaintiffs are fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiffs' attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiffs. Plaintiffs' attorneys are highly experienced in

employment Class action litigation. Plaintiffs intend to prosecute this action vigorously.

34. **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiffs and the claims of the Class as follows:

a. Class:

i. Whether Defendants misclassified Distributors as "independent contractors" instead of employees (e.g., whether Snap-On can meet its burden to meet each Prong of California's ABC test and/or its *Borello* test for employment status);

ii. Whether Defendants failed to reimburse Distributors for reasonable business expenses;

iii. Whether Defendants made illegal deductions from Distributors' earnings;

iv. Whether Defendants properly provided meal and rest breaks to Distributors;

v. Whether Defendants paid Distributors all wages when due;

vi. Whether Defendants failed to properly pay Distributors overtime; and

vii. Whether Defendants engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 *et seq.* as it relates to Distributors.

35. **Typicality.** Plaintiffs' claims are typical of the claims of all members of the Class because Defendants applied and continues to apply its illegal classification, pay, and interest practices to all Distributors.

36. **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendants' conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiffs are unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Failure to Reimburse Expenses—Lab. Code, § 2802 and IWC wage order No. 1, §§ 8-9

37. Plaintiffs incorporate by reference every allegation contained above.

38. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

39. Distributors necessarily incur many types of expenses that Defendants do not reimburse. These include but are not limited to obtaining a delivery vehicle and the types of costs incurred with vehicle ownership and use like gas, repairs, maintenance, insurance, and the like. Still further, Distributors must purchase and use a handheld computer. They are required to obtain liability insurance. In addition, Distributors pay for the right to work for Defendants with interest.

40. As alleged above, Plaintiffs and the Class incurred business expenses while performing necessary work for Defendants. They were never reimbursed because they were uniformly misclassified as independent contractors.

41. The California Labor Code, section 2802, and California's Wage Order 1, section 8 and 9 require that employers reimburse employees for business expenses reasonably incurred. Defendants failed to do so.

42. The Class has been damaged by Defendants failures in this respect in an amount to be proven at trial.

43. Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

**SECOND CAUSE OF ACTION**
**Unlawful Deductions from Wages—Lab. Code, §§ 221-223 and Wage Order 1, §§ 8-9**

44. Plaintiffs incorporate by reference every allegation contained above.

45. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

46. Under Labor Code, section 221 it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. This protection extends to deductions for mistakes in employees' work or other non-malicious conduct. Wage Order 1, sections 8 and 9, further provides that the only circumstances under which an employer can make a deduction from an employee's wage are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

47. Despite this, Defendants made and continues to make numerous deductions from the wages of their misclassified Distributors. Defendants, for example, unlawfully deduct money for paying for the territories Distributors must purchase to work for Defendants, and handheld computer fees, among other expenses.

48. Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

**THIRD CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements—Lab. Code, § 226 and 226.3 and Wage Order 1, § 7**

49. Plaintiffs incorporate by reference every allegation contained above.

50. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

51. The purpose of Labor Code section 226 is to ensure the employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

52. Defendants violated the above statute by, among other things, failing to provide accurate gross and net wages earned and hours worked on a paystub to Distributors.

53. Defendants' violations of section 226, and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiffs, seek damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

## FOURTH CAUSE OF ACTION
## Failure to Provide Overtime—Lab. Code, § 510 and Wage Order 1, § 3

54. Plaintiffs incorporate by reference every allegation contained above.

55. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

56. Labor Code, section 510, and Wage Order 1, section 3 require overtime pay of at least 1.5 times an employee's regular rate of pay for all hours worked over 8 in a day or 40 in a week.

57. Distributors, including Plaintiffs, work well over 8 hours per day and well over 40 hours per week in line with Defendants' expectations and standards as necessary to complete the work assigned to them. Despite this, they receive no overtime pay in violation of California law.

58. Defendants are liable to Plaintiffs and the Class for unpaid overtime, interest, reasonable attorney's fees and costs, and any related statutory penalties.

## FIFTH CAUSE OF ACTION
## Failure to Provide Meal Periods—Lab. Code § 226.7 and Wage Order 1, § 11

59. Plaintiffs incorporate by reference every allegation contained above.

60. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

61. Under Labor Code, sections 226.7 and 512, as well as applicable IWC Wage Orders, employers must provide a 30-minute uninterrupted, off-duty meal period for each work shift of more than five hours. Depending on hours worked, a second meal periods may be owed as well. Where adequate meal periods are not provided, employees are entitled to one hour's compensation at their regular rate of pay.

62. Defendants have no meal or rest policies and they do not record when breaks start or stop. Nor do Defendants provide for uninterrupted meal periods for Distributors or make any effort to relieve them of all duties.

63. Defendants do not pay premium wages in lieu of these breaks as required by law. And Distributors have not otherwise waived their entitlement to meal breaks.

64. As a proximate result of Defendants' unlawful conduct, the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION
## Failure to Provide Rest Breaks—Lab. Code, § 226.7 and Wage Order 1, § 12

65. Plaintiffs incorporate by reference every allegation contained above.

66. Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

67. Pursuant to Labor Code, sections 226.2 and 226.7, as well as applicable IWC Wage Orders, employers must provide a 10-minute uninterrupted, off-duty rest break for each work shift of 3.5 hours or more. Depending on hours worked, a second rest break may be owed. During these periods, an employer must relieve the employee

of all duties and relinquish all control over how an employee spends his/her time. Such rest breaks are to be paid. Where a rest break is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

68. Defendants failed to provide for rest breaks or pay Distributors for rest breaks if taken. Defendants also failed to pay compensation in lieu of these paid breaks.

69. As a proximate result of Defendants' unlawful conduct, the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

## SEVENTH CAUSE OF ACTION
## Unfair Business Practices—Bus. & Prof. Code, § 17200 et seq

70. Plaintiffs incorporate by reference every allegation contained above.

71. Defendants knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

a. Intentionally misclassifying its employee Distributors as "independent contractors;"

b. Imposing unreimbursed business expenses on and illegally deducting wages from misclassified employees in violation of Labor Code, sections 221 and 2802;

c. Failing to pay overtime to Distributor employees;

d. Failing to pay Distributor for each hour worked;

e. Failing to provide adequate meal and rest breaks to Distributors; and

f. Failing to provide accurate pay statements to Distributor in violation of Labor Code, section 226.

72. Defendants intended to, and did, profit from these illegal acts.

73. As a direct and proximate result of the above, Plaintiffs and the Class have lost money or property, thereby entitling these individuals to restitution.

74. Pursuant to the Business and Professions Code, Plaintiff and Class Members are entitled to restitution of money or property acquired by Defendants by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

75. Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Cornwell's ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiffs seek such public injunctive relief here prohibiting Defendants from continuing its illegal practice of misclassifying Distributors, including Plaintiffs, and denying them the benefit of important wage laws.

76. If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiff, Class members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

77. The Class, including Plaintiffs, have no plain, speedy, and adequate remedy at law.

78. Defendants will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiffs, the Class, and of the public, if not enjoined by this Court.

79. The success of Plaintiffs in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

80. Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiffs are therefore entitled to an award of attorneys' fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

**EIGHTH CAUSE OF ACTION**

**Violation of PAGA, Labor Code §§ 2698 et seq.; Enforcement of PAGA (By Plaintiff Corona on Behalf of Himself and as a Representative of All Similarly Aggrieved Current and Former Employees Against Defendants)**

81. Plaintiff Corona incorporates by reference every allegation contained above.

82. PAGA permits aggrieved employees, like Plaintiff Corona, to recover civil penalties for violations of numerous Labor Code sections. (*See* Labor Code § 2699.5.)

83. Defendants' conduct, as alleged above, violates numerous sections of the California Labor Code, including, but not limited to, the following:

a. Labor Code Sections 201, 202, 203, 204, 210, 216, 225.5 and 223 for failure to timely pay Plaintiffs and other aggrieved employees all earned wages;

b. Labor Code Sections 223, 1194, 1194.2, 1197, 1197.1, and 1199 for failure to pay Plaintiff Corona and other aggrieved employees all mandatory minimum wages;

c. Labor Code Sections 510, 558 and 1198, for failure to compensate Plaintiff Corona and other aggrieved employees with all required overtime pay;

d. Labor Code Sections 221, and 223, for collecting or receiving from an employee any part of wages theretofore paid by said employer to said employee;

e. Labor Code Sections 226 and 226.3, for failure to provide accurate wage statements to Plaintiff Corona and other aggrieved employees;

f. Labor Code Sections 226.2, 226.7, 512, and 558 for failure to provide meal periods and rest periods to Plaintiff Corona and

other aggrieved employees;

g. Labor Code Section 226.8, for willful misclassification of Plaintiff Corona and other aggrieved employees;

h. Labor Code Section 432.5, for requiring Plaintiff Corona and other aggrieved employees to agree to terms in writing known to be prohibited by law, including the agreement between Plaintiff Corona and other aggrieved employees and Defendants that allows unlawful deductions and failure to reimburse Plaintiff Corona and other aggrieved for business expenses reasonably incurred;

i. Labor Code Section 450, for requiring Plaintiff Corona and other aggrieved employees to make significant purchases from Defendants as a condition of employment;

j. Labor Code Section 1174, for failure to maintain accurate employment records related to Plaintiff Corona and other aggrieved employees' work;

k. Labor Code Section 1194.5, for Defendants' violations as described herein;

l. Labor Code Section 1198, for Defendants' employment of Plaintiff Corona and other aggrieved employees for longer than the maximum hours and
violative of the standard conditions of labor fixed by the Industrial Welfare Commission; and

m. Labor Code Section 2802, for failure to reimburse employees for business expenses reasonably incurred

84. Plaintiffs have complied with all administrative requirements and pre-conditions contained with California Labor Code Section 2699.3. Plaintiffs notified the California Labor Workforce Development Agency ("LWDA") on May 18, 2022,

and waited the prescribed period. Plaintiffs have not received any response from the LWDA.

85. Pursuant to PAGA and California Labor Code Sections 2699, 2699.3, and 2699.5, Plaintiffs are entitled to and hereby seeks civil penalties against Cornwell, in addition to reasonable attorney fees and costs, on behalf of themselves and all others similarly-aggrieved current and former employees for violations of the Labor Code sections referred to in this Complaint.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants, as follows:

1. For an order certifying the Class as described herein, appointing Plaintiffs as class representatives, and his counsel as class counsel;
2. For damages according to proof;
3. For enhanced damages, liquidated damages, civil penalties under PAGA, and penalties as permitted under prevailing law;
4. For pre-judgment and post-judgment interest where allowable;
5. For costs of suit;
6. For injunctive relief, including public injunctive relief, as described herein;
7. For restitution as described herein;
8. For reasonable attorneys' fees and costs; and
9. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all issues so triable.

Respectfully submitted:

Dated: May 2, 2025 **NICHOLAS & TOMASEVIC, LLP**

By: */s/ Shaun Markley*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)

Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs