UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TLALOC MUNOZ, MIGUEL RUIZ, EDGAR CORONA, and STEVEN SNAVELY,<br>individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EARTHGRAINS DISTRIBUTION, LLC and BIMBO BAKERIES USA, INC.,<br><br>Defendants. | Case No.: 3:22-cv-01269-AJB-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND DENYING PLAINTIFFS' MOTION TO COMPEL**<br><br>[ECF No. 82] |

Before the Court is Plaintiff Tlaloc Munoz, Miguel Ruiz, Edgar Corona, and Steven Snavely's (collectively, "Plaintiffs") and Defendant Earthgrains Distribution, LLC and Bimbo Bakeries USA, Inc.'s (collectively, "Defendants") Joint Motion for Determination of Discovery Dispute. ECF No. 82. Plaintiffs seek an order from the Court requiring Defendants to produce documents in response to Request for Production ("RFP") Nos. 22 and 28. *Id.* For the reasons set forth below, Plaintiffs' motion to compel is **DENIED without prejudice**.

## I. BACKGROUND

On May 2, 2025, Plaintiffs filed the operative amended complaint in this matter, alleging that they were misclassified as independent contractors and, thus, that Defendants failed to pay Plaintiffs overtime, failed to provide meal and rest breaks, failed to provide compliant wage statements, deducted certain amounts from wages, and failed to reimburse necessary business expenses. ECF No. 52. Plaintiffs are current and former Distributers and bring their action on behalf of themselves and a class of similarly situated people. *Id*. Defendant Earthgrains Baking Companies, LLC ("Earthgrains") is a wholly owned subsidiary of Defendant Bimbo Bakeries USA, Inc. ("BBU"), which is a wholly owned subsidiary of Grupo Bimbo, S.A.B. de C.V. ("Grupo Bimbo" or "parent company"). ECF No. 82-3 at 6; *see* ECF No. 11-2 at 24. As such, Grupo Bimbo is the ultimate parent company of both Earthgrains and BBU. *Id*.

Plaintiff Munoz served his second set of RFPs on Defendants. Of those, RFP No. 22 seeks:

> DOCUMENTS and ESI reflecting how Defendants or their parents/sister corporations report revenues and expenses, including but not limited to quarterly or annual reports that capture how Defendants and their parents/sister corporations document their gross revenues and their expenses including distribution expenses.

Email to Chambers (July 30, 2025, at 4:39 PM); *see also* ECF No. 82 at 10. RFP No. 28 seeks:

> DOCUMENTS and ESI discussing title and risk of loss for bakery products that California DISTRIBUTORS stock on retail shelves including but not limited to Defendants' and their parent/sister corporations' revenue recognition analysis documents that been effect from 2016 through present (by in effect meaning the last updated version that existed from 2016 through present).

*Id*.

On July 28, 2025, the parties notified the Court that they disagreed about Defendants' responses to Plaintiff Munoz's RFP Nos. 22 and 28. Email to Chambers (July 28, 2025, at 9:21 PM); *see* Chmb.R. at 2. The Court held a discovery conference on

August 1, 2025. ECF No. 75. The Court found it appropriate to issue a briefing schedule. ECF No. 76. The parties timely filed their Joint Motion for Determination of Discovery Dispute on August 18, 2025. ECF No. 82. This order follows.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure permit parties to obtain nonprivileged information if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b). Courts have broad discretion to determine relevance for discovery purposes. *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *3 (S.D. Cal. June 22, 2017). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). The question of relevance "should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Doherty*, 2017 WL 1885677, at *2.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. FED. R. CIV. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept

of proportionality.'" *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26. *Seegert v. Rexall Sundown*, No. 17-cv-01243-JAH-JLB, 2019 WL 12044514, at *3 (S.D. Cal. March 26, 2019); *see Bryant v. Ochoa*, No. 07CV200-TM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Seegert*, 2019 WL 12044514, at *3 (citations omitted). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Where "the responding party provides a boilerplate or generalized objection, said 'objections are inadequate and tantamount to not making any objection at all.'" *Bess v. Cate*, No. 07cv1989-JAM-JFM, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 26, 2008) (quoting *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)).

District courts have broad discretion to manage discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see HDT Bio Corp. v. Emcure Pharms., Ltd.,* No. C-22-0334-JLR, 2022 WL 16835758, at *4, *6–*9 (W.D. Wash. Nov. 9, 2022) (finding that parent company had control over documents of its subsidiary and granting motion to compel, explaining that "[d]istrict courts have broad discretion to determine the scope of discovery"). Specifically, prior to class certification, discovery lies entirely within the discretion of the court. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

//
//
//

### III. RELEVANCE

Plaintiffs seek documents that analyze how Defendants and their parent company report and recognize revenues. ECF No. 82 at 4.[1] Plaintiffs seek this information to test who Defendants and their parent corporation view as their actual "customer"—i.e., whether it is the Plaintiff-Distributors, as Defendants allege; or the retailers, as Plaintiffs allege. ECF No. 82 at 4–5. Plaintiffs contend that revenue recognition analysis documents will show the scope of Defendants' "relative control of the operation," which relates to the first two prongs of the ABC test as to whether Plaintiffs should be considered employees. *Id.* at 5. Plaintiffs also argue that because Grupo Bimbo acts as a guarantor to Plaintiffs' Distribution Agreements, Grupo Bimbo's accounting policies are relevant and should be made available. *Id.* at 8. The Court finds Plaintiffs' argument persuasive and concludes that this information goes to the merits of Plaintiffs' claims regarding misclassification. Thus, the Court finds that Plaintiffs have met their burden to establish that the information sought by RFP Nos. 22 and 28 is relevant. The Court also finds that the information is proportional to the needs of the case. The documents are important to the issues at stake in the action, Plaintiffs do not otherwise have access to the information, and the amount in controversy reflects a class action with eight causes of action and over one hundred class members. *See* ECF No. 52 at 8.

Defendants argue that RFP Nos. 22 and 28 are "disproportionate to the needs for class certification." ECF No. 82 at 11.[2] However, as the Court has instructed the parties many times, "[f]act and class discovery are not bifurcated." ECF No. 43 at 1; ECF No. 71 at 3. When discovery is not bifurcated, "the parties are permitted to conduct discovery

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

[2] Defendants also argue that Plaintiffs' RFPs are cumulative and overbroad. ECF No. 82 at 11. The Court disagrees. The RFPs are narrowly tailored and directed to relevant information as discussed further herein.

relevant to both class certification and the merits of the case." *Hawkins v. Kroger*, No. 15cv2320-JM-BLM, 2019 WL 4416132, at *3 (S.D. Cal. Sept. 16, 2019). Defendant's conclusory objection as to proportionality ignores the Court's express direction in this regard. *See Lucas v. Jos. A. Bank Clothiers, Inc.*, No. 14cv1631-LAB-JLB, 2015 U.S. Dist. LEXIS 189140, at *2 (S.D. Cal. Aug. 6, 2015) ("The Court overrules Defendant's objection that its communications regarding pricing strategy are not relevant to class certification. Discovery in this case is not bifurcated, and Defendant has not met its burden of showing that producing the communications at issue prior to a ruling on class certification would be unduly burdensome.[3]"); *In re Toys "R" Us-Delaware, Inc.*, No. ML-08-1980-MMM-FMOx, 2010 WL 4942645, at *5 (C.D. Cal. July 29, 2010) (overruling defendant's objection that the discovery sought was premature because it did not relate to class certification). As such, Defendants' conclusory objection does not persuade the Court that Plaintiffs' RFPs are not proportional to the needs of the case.

---

[3] The Court notes that Defendants likewise state in a conclusory fashion that RFP Nos. 22 and 28 are "burdensome." ECF No. 82 at 11. However, the party "claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Laryngeal Mask Co. v. Ambu A/S*, No. 07cv1988-DMS-NLS, 2009 WL 10672487, at *2 (S.D. Cal. Jan. 27, 2009) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D. Nev. 1997). "[B]oiler plate objections that a request for discovery is overbroad and unduly burdensome … are improper unless based on particularized facts." *Vietnam Veterans of Am. v. CIA*, No. C-09-37-CW-JL, 2010 U.S. Dist. LEXIS 143865, at *32 (N.D. Cal. Nov. 12, 2010) (internal quotations omitted); *Hall v. Marriott*, No. 19-cv-1715-JLS-AHG, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) (thorough explanation of burden objections and collecting cases). "Just because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." *Jackson*, 173 F.R.D. at 528–29; *see Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) ("Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient"). As such, Defendants' conclusory burden objection does not persuade the Court that Plaintiffs' RFPs are not proportional to the needs of the case.

## IV. POSSESSION, CUSTODY, OR CONTROL

The Court will next address Defendants' assertion that they do not have possession, custody, or control of the requested documents.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 34, a party must produce relevant, non-privileged documents in its "possession, custody, or control." FED. R. CIV. P. 34(a)(1). The phrase "'possession, custody, or control' is in the disjunctive and only one of the numerated requirements need be met." *Soto*, 162 F.R.D. at 619 (citation omitted); *see Nugent v. Secretlab US, Inc.*, No. 22-cv-8944-RFK-PHK, 2024 WL 4331812, at *9 (N.D. Cal. Sept 27, 2024) (explaining that Rule 34 refers to documents in a party's "possession, *or* custody, *or* control") (citation omitted, emphasis in original). "The party seeking production of the documents [] bears the burden of proving that the opposing party has such control." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *see also Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *13 (E.D. Cal. Dec. 6, 2007).

With regard to "possession" or "custody" of a document, courts typically refer to a party's "actual" possession or custody, or "physical" possession or custody. *Nugent*, 2024 WL 4331812, at *4 (collecting cases). Further, "[a] party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative." *Stone v. Vasquez*, No. 1:05-cv-1377-JAT, 2009 WL 2581338, at *1 (E.D. Cal. Aug. 20, 2009).

"Control" is defined as "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *Int'l Union*, 870 F.2d at 1452); *see also Micron Tech., Inc. v. Tessera, Inc.*, No. C-06-80096 MISC-JW-HRL, 2006 WL 1646133, at *1 (N.D. Cal. June 14, 2006) ("Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement."). In the Ninth Circuit, the determination of "[c]ontrol must be firmly placed in reality." *Int'l Union*, 870 F.2d at 1453; *see Matthew Enter. Inc. v. Chrysler Grp. LLC*, 2015 WL

8482256, *3 (N.D. Cal. 2015) ("the Ninth Circuit has explicitly rejected an invitation to define 'control' in a manner that focuses on the party's practical ability to obtain the requested documents."). Proof of "theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid Litig.*, 191 F.3d at 1107; *Int'l Union*, 870 F.2d at 1453–54.

Central to the question of control "is the relationship between the party and [] entity having actual possession of the documents." *Seegert*, 2019 WL 12044514, at *3 (quoting *Allen v. Woodford*, No. CV-F-05-1104-OWW-LJO, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007)). "Courts engage in a factual and case specific inquiry to make the determination" regarding control. *Nugent*, 2024 WL 4331812, at *4. To determine whether one corporate entity has control for purposes of discovery over another entity, courts look to the following factors:

> (1) whether the corporations have interlocking corporate structure and management; (2) whether the corporations operate as a single unit in all aspects of the relevant business; (3) whether the corporations have identical stockholders and directors; (4) whether the subsidiary acted as the agent of the parent in the relevant transaction; (5) whether the subsidiary can secure documents from the parent to meet its own business needs; (6) whether the subsidiary has some ownership interest in the parent; (7) and other factual inquiries that are case specific.

*Id.*; *see Cryptography Rsch., Inc. v. Visa Int'l Serv. Ass'n*, No. C04-04143-JW-HRL, 2005 WL 8162416, at *2 n.2 (N.D. Cal. Aug. 4, 2005) (describing factors and also explaining that "[a] showing that the subsidiary is the 'alter ego' of the parent corporation is another possible way to prove that this 'legal right' exists").

### B. Parties' Positions

Plaintiffs argue that Defendants have actual possession or custody of Grupo Bimbo's accounting documents. ECF No. 82 at 6. Plaintiffs contend that, because BBU's president, Tony Gavin, is a member of Grupo Bimbo's steering committee, "presumably Mr. Gavin has access to Grupo Bimbo's annual reports in addition to the underlying financial data and memorandums that more deeply analyze the same topics presented in the annual

reports." *Id*. Plaintiffs also contend that Mr. Gavin could access the documents "through central repositories or shared computer systems." *Id*.

      Plaintiffs also argue that Defendants have control of Grupo Bimbo's accounting documents because Grupo Bimbo "directly asserts itself into the relationship between Plaintiffs and Defendants" by guaranteeing Defendants' performance. ECF No. 82 at 7. Specifically, Plaintiffs contend that Defendants structure the Distribution Agreements sent to potential distributors "as a franchise opportunity which is guaranteed by Grupo Bimbo and relies on Grupo Bimbo's audited financial statements." ECF No. 82 at 3; *see* ECF No. 11-2 at 21 (Defendants' Franchise Disclosure Document ("FDD"), stating that "Grupo Bimbo guarantees E[arthgrains]'s obligations to our distributors (franchisees) under our distribution (franchise) agreements"); *Id*. at 113 (Defendants' FDD, stating that "our performance obligations to you under the terms of the Distribution Agreement are unconditionally guaranteed by our ultimate parent, Grupo Bimbo"); *Id*. at 258 (Exhibit to Defendants' FDD, representing that Grupo Bimbo "absolutely and unconditionally guarantees the performance by Earthgrains"). Plaintiffs also point to Grupo Bimbo having consolidated finances that include reporting about Defendants. ECF No. 82 at 4, 8. Additionally, Plaintiffs assert that, since BBU's president is on Grupo Bimbo's steering committee, there is an overlap in directors and management that supports a finding of control. *Id*. at 4; *see* ECF No. 82-7 at 2 (Mr. Gavin listed as steering committee "board member" on Grupo Bimbo's website); ECF No. 82-4 at 213 (Mr. Gavin listed as member of steering committee on Grupo Bimbo's 2023 annual report). Plaintiffs also highlight that, as president of BBU, Mr. Gavin reports directly to Grupo Bimbo's Executive Vice President, Mark Bendix. ECF No. 82-8 at 5. Plaintiffs argue that Defendants impermissibly "accept Grupo Bimbo's audited financials in place of their own and its guarantee of the performance under the contract, but on the other hand disclaim any legal ability to get additional financial and accounting information from Grupo Bimbo[.]" ECF No. 82 at 8.

      Defendants contend that they do not have control over the documents sought by Plaintiffs because Defendants and Grupo Bimbo "are separate companies, with separate

employees, documents, and accounting departments;" and, thus, Defendants do not have a legally enforceable right to demand documents from Grupo Bimbo. ECF No. 82 at 9. Defendants argue that they do not have a heightened relationship with their parent corporation. *Id*. at 13–14. Defendants emphasize that Grupo Bimbo is a foreign company, based in Mexico. *Id*. at 10. Defendants also point out that Grupo Bimbo has a separate legal team from Defendants' legal team, including separate outside counsel. *Id*. at 13. Defendants represent that no BBU employees are on Grupo Bimbo's Board of Directors and there are no shared executives, directors, or employees. *Id*. at 14. Though Mr. Gavin is on Grupo Bimbo's steering committee, Defendants represent that the steering committee serves "to discuss strategic global operations to ensure the corporate family is aligned," which is not related to Grupo Bimbo's accounting or financials. *Id*. at 13–14.

Defendants also contend that they do not have possession or custody of the documents. Defendants emphasize that they do not need to access Grupo Bimbo's accounting documents to carry out their own financial reporting, partly because the companies operate independently and partly because Grupo Bimbo's documents are in Spanish. ECF No. 82 at 14. Defendants refute Plaintiffs' claim that Mr. Gavin could access Grupo Bimbo's revenue recognition documents on a shared document repository, explaining that the companies have separate document depositories and even members of Defendants' accounting teams do not have access to Grupo Bimbo's working financial documents. *Id*. For example, Defendants represent that Darrell Miller, BBU's Vice President, Controller, and Treasurer, only has access to a global intranet site where Grupo Bimbo publishes policies, not working financial documents. *Id*.

### C.    Discussion

Here, Plaintiffs have not met their burden to establish that Defendants have possession, custody, or control of Grupo Bimbo's documents. The Court will first address whether Defendants have "control."

As to the first factor, whether the corporations have interlocking corporate structure and management, the President of BBU reports directly to Grupo Bimbo's Executive Vice

President and serves on Grupo Bimbo's steering committee. ECF No. 82-4 at 213; ECF No. 82-7 at 2; ECF No. 82-8 at 5. Courts have declined to find control in cases with stronger evidence of interlocking corporate management than the instant matter. *See, e.g.*, *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2020 WL 1667410, at *2 (N.D. Cal. April 3, 2020) (finding no control although "all of [subsidiary's] employees report to [parent company] and [subsidiary] sends finance, sales, and logistics information to [parent company] on a weekly basis" and although "[parent company] is involved when [subsidiary] is sued for personal injuries caused by the device," because that "merely describe[s] a fairly typical relationship between a distributor subsidiary, a manufacturing subsidiary, and their parent corporation and do not establish a legal right to obtain the documents Plaintiff seeks."); *Micron Tech.*, 2006 WL 1646133, at *2 (N.D. Cal. June 14, 2006) (finding no control and explaining that, although there was evidence that the entities were "closely related [] with some management in common[,] [t]his evidence would likely be sufficient under a 'practical ability' standard, but it falls short under the Ninth Circuit's 'legal right' test"). Thus, without more, this factor weighs against a finding of control. *See Cryptography Rsch.*, 2005 WL 8162416, at *3 (finding no control because, in part, "the fact that the [subsidiary's] president sits on the [parent company's] management committee does not establish an interlocking corporate structure, and does not prove that the [subsidiary] president has the authority to demand documents from [the parent company]."); *see also Nugent*, 2024 WL 4331812, at *9 (finding first factor leaned in favor of control when corporate relationship of parent and subsidiary went "beyond mere [] coordination, collaboration, or even integration of functions and personnel" and showed an "operational dependency and synergistic (almost symbiotic) coordination between the entities," when employee email domains were the same, directors substantially overlapped, the primary offices of the subsidiary were listed as the parent company's address, and the parent company micromanaged and performed many of the subsidiary's duties).

As to the second factor, whether the corporations operate as a single unit in all aspects of the relevant business, Plaintiffs argue that Grupo Bimbo's consolidated finances

and reporting support a finding of control. However, without more, this factor weighs against a finding of control. *See Nugent*, 2024 WL 4331812, at *10 (finding second factor leaned in favor of control when all major business-decision makers and decision-making process were managed from a single location, at the parent company, when the subsidiary "has no employees and exclusively utilizes [the parent company's] officers and employees for all work functions," and when the computer systems were "not merely integrated, they are one and the same for both entities," even though the companies had separate tax structures).

As to the third factor, whether the corporations have identical stockholders and directors, the only overlapping employee is BBU's President, who also serves on Grupo Bimbo's steering committee. That is not sufficient to establish control. *See, e.g.*, *Dugan v. Lloyds TBS Bank, PLC*, No. 12-cv-02549-WHA-NJV, 2013 WL 4758055, at *2–*3 (N.D. Cal. Sept. 4, 2014) (finding no control although the subsidiary and parent company share the same internal legal group and had the "exact same ten-member Board of Directors," because "the boards maintain separate meeting agendas and separate minutes" and the subsidiary had no ownership interest in the parent company, but requiring that the subsidiary produce documents that were accessible in a shared data storage). Further, courts that have found that this factor leaned in favor of control were provided more compelling facts than the instant matter. *See, e.g.*, *Nugent*, 2024 WL 4331812, at *12 (finding third factor leaned in favor of control because the "two corporations ha[d] identical directors," explaining that the CEO, CSO, and General Counsel were the same for both the parent and subsidiary); *cf. HDT Bio Corp.*, 2022 WL 16835758, at *8 (finding factor leaned in favor of control when four of the seven members of the Board of Directors overlapped, three other officers overlapped, and the subsidiary and parent company shared a finance team and tax department). Thus, without more, this factor weighs against a finding of control.

As to the fourth factor, whether the subsidiary acted as the agent of the parent in the relevant transaction, Plaintiffs assert that Grupo Bimbo acts as the guarantor for Defendants

in their relationship with Plaintiffs. This, however, misses the mark because the test is focused on control and not merely some financial relationship. *Ehrlich v. BMW of N. Am., LLC*, No. CV-10-1151-ABC-PJWx, 2011 WL 3489105, at *1–*2 (C.D. Cal. May 2, 2011) (finding no control, in part, because the subsidiary was not an agent of the parent company); *Hambrecht Wine Group, L.P. v. Millennium Imp. LLC*, C-05-04625-JW-HRL, 2006 WL 3302428, at *2 (N.D. Cal. Nov. 14, 2006) (finding no control when the "plaintiff fail[ed] to distinguish between a parent's control over a subsidiary, and a subsidiary's control over its parent"). Thus, without more, this factor weighs against a finding of control. *See Cryptography Rsch.*, 2005 WL 8162416, at *2–*3 (finding no control and explaining that, though a contract between the subsidiary and a third-party stated that the parent company would provide the microchips, and the subsidiary's president served on a strategic committee for the parent company, that "evidence would likely be sufficient under a 'practical ability' standard, but its showing falls short under the Ninth Circuit's 'legal right' test").

As to the fifth factor, whether the subsidiary can secure documents from the parent to meet its own business needs, Plaintiffs' allegations regarding document access were rebutted by Defendants. For example, though Plaintiffs suggested that Mr. Gavin has access to Grupo Bimbo's annual reports and underlying financial data "through central repositories or shared computer systems," (ECF No. 82 at 6), Defendants represent that is not the case. ECF No. 82 at 14; *see ASUSTeK Computer Inc. v. Round Rock Rsch.*, LLC, No. 12-cv-02099-JST-NC, 2013 WL 6000992, at *2 (N.D. Cal. Nov. 12, 2013) ("vague statements and counsel's speculation that a [subsidiary] employee could access the documents [of the parent company] in Taiwan are insufficient" to prove control). Though Defendants concede that there is a global intranet site that is accessible by both Grupo Bimbo and its subsidiaries, Defendants represent that the site holds Grupo Bimbo policies, but not working financial documents or reporting analyses. ECF No. 82 at 14. Though the Court expresses skepticism regarding why Mr. Miller, ***and not*** Mr. Gavin, searched the global intranet site to see what he was able to access, such questions do not equate to

Plaintiffs having met their burden here. *Id.* at 14; *see, e.g.*, *Ehrlich*, 2011 WL 3489105, at *1–*2 (finding no control because the subsidiary was not an agent of the parent company, and because the subsidiary did not have access to the documents by request or in the normal course of business); *Tessera, Inc. v. Micron Tech., Inc.*, No. C-06-80024-MISC-JW-PVT, 2006 U.S. Dist. LEXIS 25114, at *15 (N.D. Cal. Mar. 22, 2006) (finding no control, although the parent company and subsidiary had two overlapping directors and shared the same counsel, and although the parent company "exercise[d] significant control over its U.S. subsidiary," because the plaintiff made no showing that the two entities shared any document databases). Further, courts that found that this factor leaned in favor of control were presented much stronger evidence of shared databases. *See, e.g.*, *Nugent*, 2024 WL 4331812, at *13 (finding fifth factor leaned in favor of control because all files were held in a "common centralized repository, where documents belonging to both entities are electronically stored in a cloud-based system together. This centralized storage system ensures that all relevant documents are easily accessible by anyone logging into the system without any firewalls, credential differences, or security systems preventing a Secretlab US person accessing the documents of Secretlab SG."); *Choice-Intersil Micro systems, Inc. v. Agere Sys.*, 224 F.R.D. 471, 473 (N.D. Cal. 2004) (finding control when the entities shared databases and the subsidiary was able to obtain high-level marketing documents regarding a chip from the German parent company upon demand, concluding that the subsidiary also had control over technical documents regarding that chip in the possession of the parent company). Thus, without more, this factor weighs against a finding of control. Additionally, for the foregoing reasons, the Court also finds that Defendants do not have actual possession or custody of the documents.

As to the sixth factor, whether the subsidiary has some ownership interest in the parent, Plaintiffs assert that Defendants are wholly owned subsidiaries of Grupo Bimbo. This also falls short of the required showing for control. *See Nugent*, 2024 WL 4331812, at *13 (finding sixth factor did not lean in favor of control when "[the subsidiary] does not own [the parent company], but rather is itself wholly owned by [the parent company,]" and

rejecting the theoretical possibility that the overlapping CEO, CSO, and General Counsel own stock of the parent company); *Dugan*, 2013 WL 4758055, at *3 (finding no control because, in part, the subsidiary had no ownership interest in the parent company). Thus, without more, this factor weighs against a finding of control.

Accordingly, the Court "concludes that Defendants cannot be compelled to produce the documents in question because based on the evidence presently before the Court, it has not been established that they have possession or control, or the right to control and obtain, the documents requested." *See Thomas*, 2007 WL 4302974, at *16 (denying motion to compel because plaintiff had not met its burden to prove that a former employee had control over its former employer's policy documents, and directing the parties "to meet and confer in good faith to determine what arrangements, if any, can be made to facilitate the production of the requested discovery" since declarations had been provided establishing who other custodians may be).

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES without prejudice** Plaintiffs' motion to compel. ECF No. 82. Here, Plaintiffs did meet their burden to show that Defendants have possession, custody, or control over the documents. However, the Court is cognizant that discovery is ongoing and "Defendants also will be producing a corporate witness pursuant to Rule 30(b)(6) that can speak generally to Defendants' revenue recognition processes." Email to Chambers (July 28, 2025, at 9:21 PM). Thus, Plaintiffs may raise the issue again if they are able to uncover additional evidence through discovery to support their position as to possession, custody, or control.

**IT IS SO ORDERED.**

Dated: August 26, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge