UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TLALOC MUNOZ, MIGUEL RUIZ, EDGAR CORONA, and STEVEN SNAVELY, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EARTHGRAINS DISTRIBUTION, LLC and BIMBO BAKERIES USA, INC.,<br><br>Defendants. | Case No.: 3:22-cv-01269-AJB-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF SECOND DISCOVERY DISPUTE AND DENYING DEFENDANTS' MOTION TO COMPEL**<br><br>**[ECF No. 84]** |

Before the Court is Plaintiff Tlaloc Munoz, Miguel Ruiz, Edgar Corona, and Steven Snavely's (collectively, "Plaintiffs") and Defendant Earthgrains Distribution, LLC and Bimbo Bakeries USA, Inc.'s (collectively, "Defendants") Joint Motion for Determination of Second Discovery Dispute. ECF No. 84. Defendants seek an order from the Court requiring Plaintiff Snavely to produce tax returns in response to Request for Production ("RFP") Nos. 11, 19, and 20. *Id*. For the reasons set forth below, Defendants' motion to compel is **DENIED**.

## I. BACKGROUND

On August 26, 2022, Defendants removed this matter to federal court under the Class Action Fairness Act ("CAFA"), alleging diversity of citizenship. ECF No. 1 at 8–10 (Plaintiffs are citizens of California, and Defendants are citizens of Delaware and Pennsylvania). On May 2, 2025, Plaintiffs filed the operative amended complaint in this matter, alleging that they were misclassified as independent contractors and, thus, that Defendants failed to pay Plaintiffs overtime, failed to provide meal and rest breaks, failed to provide compliant wage statements, deducted certain amounts from wages, and failed to reimburse necessary business expenses. ECF No. 52. Plaintiffs are current and former Distributors and bring their action on behalf of themselves and a class of similarly situated people. *Id*. All of Plaintiffs' claims arise under California law. *Id*. at 10–18 (alleging violations of California Labor Code sections 221–23, 226, 226.7, 510, and 2802; California's Industrial Wage Commission ("IWC") Wage Order 1 sections 3, 7–9, 11–12; California Business and Professions Code section 17200, *et seq*. ("Unfair Competition Law"); and California Private Attorneys General Act ("PAGA"), California Labor Code section 2698, *et seq*.).

Defendant Earthgrains Distribution, LLC ("Earthgrains") served its first set of RFPs on Plaintiffs on May 12, 2025. ECF No. 84 at 31. Relevant to this dispute, RFP No. 11 seeks:

> ALL DOCUMENTS that evidence or reference ALL expenses incurred by PLAINTIFF during the time that PLAINTIFF contracted with DEFENDANT, including, but not limited to, insurance policies and costs, maintenance records, and any expenses for gas, parking, employee or other helper expenses, home office expenses, accountant or financial advisor expenses, and tolls.

*Id*. at 23. RFP No. 19 seeks:

> PLAINTIFF'S and his businesses' financial records and statements (such balance sheets, income statements, or any records of sales and expenses) during the time that PLAINTIFF contracted with DEFENDANT.

*Id*. at 25. RFP No. 20 seeks:

>PLAINTIFF'S and his businesses' tax returns and related schedules (federal, state and local) during the time that PLAINTIFF contracted with DEFENDANT.

*Id.* at 25. RFP Nos. 11, 19, and 20 are identical across all four Plaintiffs. *Id.* at 3 n.1.[1]

On July 28, 2025, the parties notified the Court that they disagreed about Plaintiffs' responses to Defendant Earthgrains's RFP Nos. 11, 19, and 20, among others. Email to Chambers (Aug. 4, 2025, at 8:45 PM) (notifying Court of disputes regarding 5 of Defendants' Interrogatories and 24 of Defendants' RFPs); *see* Chmb.R. at 2. The Court required the parties to lodge a joint chart with the text of the requests and responses at issue. ECF No. 77 at 2. The Court provided guidance to the parties regarding their disputes on August 7, 2025. Email from Chambers (Aug. 7, 2025, at 7:59 PM). Plaintiffs supplemented their production on August 8, 2025. Email to Chambers (Aug. 11, 2025, at 3:48 PM). The Court held a discovery conference regarding the remaining requests and responses at issue on August 14, 2025. ECF No. 80. The Court ordered Plaintiffs to provide supplemental responses by August 19, 2025, and found it appropriate to issue a briefing schedule for this Joint Motion. ECF No. 81. The parties timely filed their Joint Motion for Determination of Discovery Dispute on August 29, 2025. ECF No. 84. This order follows.

## II.   LEGAL STANDARD

District courts have broad discretion to manage discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (denying motion to compel production of tax returns, and explaining that "[d]istrict courts have wide latitude in controlling discovery") (internal citations omitted). Specifically, prior to class certification, discovery lies entirely within the discretion of the court. *Vinole v.*

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

*Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

### III. RELEVANCE

The Court will first address whether the documents sought by Defendants are relevant.

#### A. Legal Standard

The Federal Rules of Civil Procedure permit parties to obtain nonprivileged information if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b). Courts have broad discretion to determine relevance for discovery purposes. *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *3 (S.D. Cal. June 22, 2017). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). The question of relevance "should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Doherty*, 2017 WL 1885677, at *2.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. FED. R. CIV. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit. *Id.* "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26. *Landis v. Lionbridge Techs., LLC*, No. 2:24-cv-07494-MRA-MAR, 2025 U.S. Dist. LEXIS 90151, at *4 (C.D. Cal. May 12, 2025); *see Bryant v. Ochoa*, No. 07CV200-TM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). Thereafter, the party opposing discovery "has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Goro*, 334 F.R.D. at 283 (citations omitted).

### B. Discussion

Defendants argue that inquiry into the financial and tax records of Plaintiffs' business operations is relevant to the question of misclassification. ECF No. 84 at 7. For example, Defendants explain that the information is relevant to "whether Plaintiffs could control the profits and losses of their businesses and the investments they made in their businesses, and to the merits and damages for their underlying Labor Code violation claims, such as the amounts and types of expenses they incurred in running their businesses, and the amounts earned, which is necessary to calculate overtime." *Id.*

The Court agrees that the financial information sought is relevant. *See Ortolivo v. Precision Dynamics Int'l, LLC*, No. 22-cv-01812-JSW, 2023 WL 8237265, at *1–*2 (N.D. Cal. Nov. 28, 2023) (concluding that "tax returns would contain information that would be 'relevant' to th[e] determination" of whether plaintiff was an employee or independent contractor, but denying request to compel production due to tax return privilege); *Bowerman v. Field Asset Servs. Inc.*, No. 13-cv-00057-WHO, 2013 WL 6057043, at *2–*3 (N.D. Cal. Nov. 14, 2013) (concluding information was relevant to issue of misclassification but denying request to compel production due to tax return privilege). The Court also agrees with Defendants that the specific legal test for misclassification does

not impact the relevance determination. ECF No. 84 at 84 (arguing relevance and referencing *Borello*[2] test and *Dynamex*[3] ABC Test); *Goro*, 334 F.R.D. at 281 n.3 (discussing *Borello* and *Dynamex* tests and concluding that, "[u]nder either test, Plaintiffs' tax returns may be relevant, but are not necessary to determine whether they were properly classified as independent contractors").

Defendants, however, do not address whether the information sought is proportional to the needs of the case. *Landis*, 2025 U.S. Dist. LEXIS 90151, at *4 ("relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case") (internal citation omitted). As Defendants have not met their burden, the Court need not elaborate; however, the Court notes that Plaintiff Snavely is a current Distributor, while the other plaintiffs no longer work for or with Defendants, so the burden to Plaintiff Snavely is greater than the other plaintiffs. This is particularly true given the private nature of this information and Defendants' actions in using the tax returns of other Plaintiffs to seek broad discovery of personal information from their accountants.

## IV. WHETHER PLAINTIFF SNAVELY SHOULD BE COMPELLED TO PRODUCE HIS TAX RETURNS

Next, the Court turns to whether the information is privileged or otherwise protected from discovery.

### A. Legal Standard

In diversity actions, questions of privilege are controlled by state law. *In re Cal. Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); FED. R. EVID. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Here, all of Plaintiffs' claims arise under California law. ECF No. 52 at 10–18 (alleging violations of the California Labor Code, California's IWC Wage Order,

---

[2] *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rel.*, 48 Cal. 3d 341 (1989)

[3] *Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903 (2018).

California's Unfair Competition Law, and PAGA). Further, Defendants removed this matter to federal court under CAFA, alleging diversity of citizenship. ECF No. 1 at 8–10 (Plaintiffs are citizens of California, and Defendants are citizens of Delaware and Pennsylvania). As such, the Court finds that California law governs assertions of privilege in this matter. *See, e.g.*, *Goro*, 334 F.R.D. at 280 (finding that California law governed application of the tax return privilege in a putative class action alleging violations of the California Labor Code, California's IWC Wage Order, California's Unfair Competition Law, and PAGA, that was removed to federal court by defendants due to diversity of citizenship); *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 1684964, at *1 (N.D. Cal. May 3, 2017) (in a PAGA action alleging independent contractor misclassification, the court explained that "Plaintiff's complaint alleges []CAFA[] jurisdiction under 28 U.S.C. § 1332(d) and is therefore before the Court on diversity jurisdiction, so state law controls questions of privilege"); *Taylor v. Shippers Transp. Express, Inc.*, No. 13-cv-2092-BRO-PLAx, 2014 WL 12560878, at *2 (C.D. Cal. May 27, 2014) (applying state law to tax privilege question in CAFA case).

California courts recognize a statutory privilege against disclosing tax returns. *Schnabel v. Super. Ct. of Orange Cnty.*, 5 Cal. 4th 704, 718–21 (1993); *Weingarten v. Super. Ct. of San Diego Cnty.*, 102 Cal. App. 4th 268, 274 (2002). The California tax privilege applies to tax returns and records submitted with the tax returns, such as W-2 and 1099 forms. *Brown v. Super. Ct. of the City & Cnty. of San Francisco*, 71 Cal. App. 3d 141, 143–44 (1977) (extending tax privilege to W-2 forms because the forms "are required to be attached to a taxpayer's state and federal income tax returns [and] constitute an integral part of the return"); *Bowerman*, 2013 WL 6057043, at *1–*3 (applying California law and holding that Schedule Cs, payroll tax records, and 1099s for any employees hired were protected from discovery by the tax privilege).

Although "'California law affords a very strong privilege from discovery for tax returns,' the tax return privilege is not absolute." *Davis v. Bangs*, No. 2:20-cv-05738-SB-JDEx, 2021 WL 6882324, at *5 (C.D. Cal. Mar. 26, 2021) (quoting *Net-Com Servs., Inc.*

*v. Eupen Cable USA, Inc.*, No. 11-cv-2553-PSG-SSx, 2012 WL 12887396, at *4 (C.D. Cal. Nov. 14, 2012)). "The privilege will not be upheld when: (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved." *Goro*, 334 F.R.D. at 280. "A trial court has broad discretion in determining the applicability of a statutory privilege[,]" including the tax return privilege. *Weingarten*, 102 Cal. App. 4th at 274. "The requesting party bears the burden of demonstrating that an exception to the tax privilege applies." *Goro*, 334 F.R.D. at 280; *Lawson*, 2017 WL 1684964, at *2; *see also Schnabel*, 5 Cal. 4th at 721.

### B.    Parties' Positions

Defendants assert that the tax return privilege should not shield Plaintiff Snavely's production in this case because the gravamen of the lawsuit is inconsistent with the privilege. Defendants argue that Plaintiff Snavely's production falls short "of telling Defendants or the Court much about his business, the amounts and types of investments in those businesses, his reliance on and expense incurred for paid helpers, how much he paid their helpers, the revenue and income of his business or provide any insight into his actual damages for unpaid wages or expenses." ECF No. 84 at 9. Defendants argue that Plaintiff Snavely's "tax returns provide what is likely the only clear picture of the nature of his business[] and the harms stemming from the allegations of misconduct he has lodged at Defendants." *Id*. Thus, if Plaintiff Snavely does not produce additional evidence or provide Defendants with the name of his business accountant, Defendants argue that he must produce his tax returns. *Id*. at 9–10.

Plaintiffs contend that Plaintiff Snavely "produced hundreds of invoices/receipts related to his business expenses incurred following a diligent search and reasonable inquiry" and was questioned about them during his August 27, 2025, deposition. *Id*. at 12. As such, he is resting on his tax privilege assertion with regard to producing his tax returns. *Id*.

//

### C. Discussion

As the requesting party, Defendants bear the burden of demonstrating that an exception to the tax privilege applies. Defendants have not met their burden. The first[4] and third[5] exceptions are not at issue here; thus, the Court will focus on the second.

The Court does not find that the gravamen of the instant lawsuit—i.e., the substantial point or essence of a claim[6]—is inconsistent with the tax return privilege. *See, e.g.*, *Landis*, 2025 U.S. Dist. LEXIS 90151, at *11 (finding that "the gravamen of Plaintiff's lawsuit, which focuses on Defendant's alleged misclassification of him as an independent contractor, is not inconsistent with the [tax return] privilege"); *Goro*, 334 F.R.D. at 280 (finding that the gravamen of a putative class action alleging violations of the California Labor Code, California's IWC Wage Order, California's Unfair Competition Law, and PAGA, was not inconsistent with the tax return privilege); *Taylor*, 2014 WL 12560878, at *2 (finding the second factor not satisfied because "the claim by plaintiffs and the class members that they have been wrongly classified as independent contractors 'does not place the contents of their tax returns and tax documents squarely into question.'") (quoting *Bowerman*, 2013 WL 6057043, at *2).

Defendants, however, argue that "[c]ourts in this district will order the production of tax records in independent contractor misclassification actions[.]" ECF No. 84 at 3

---

[4] Defendants do not argue, and the Court finds no evidence, that Plaintiff Snavely waived his tax return privilege.

[5] The public policy exception "is narrow and applies only when warranted by a legislatively declared public policy." *Weingarten*, 102 Cal. App. 4th at 274 (citations and quotations omitted). Defendants do not argue that public policy warrants waiver, and "the assertion of damages claims that makes the financial information underlying tax returns relevant does not, without more, represent a greater public policy meriting waiver of the tax privilege." *Goro*, 334 F.R.D. at 281–82 (finding that none of the exceptions to the tax return privilege applied in independent contractor misclassification class action).

[6] *Gravamen*, BLACK'S LAW DICTIONARY (10th ed. 2014).

(citing *Saravia v. Dynamex, Inc.*, No. C-14-05003-WHA, 2016 WL 4140509 (N.D.[7] Cal. Aug. 4, 2016)). Defendants' reliance on *Saravia*, however, is unpersuasive. In *Saravia*, a Fair Labor Standards Act collective action, the court rejected the plaintiffs' assertion that California's qualified privilege over tax records applied because the claims arose under federal law. 2016 WL 4140509, at *2. As such, the court applied the federal privilege rules, found that the tax returns were not privileged, and found that the plaintiffs' privacy interests did not outweigh the tax returns' probative value. *Id.* at *2–*4. In contrast, here, all of Plaintiffs' claims arise under California law and Defendants removed this matter to federal court under CAFA, alleging diversity of citizenship. ECF No. 52 at 10–18 (alleging violations of the California Labor Code, California's IWC Wage Order, California's Unfair Competition Law, and PAGA); ECF No. 1 at 8–10. As discussed above, California law governs the application of the tax return privilege in this diversity case. Since *Saravia* did not consider **California's** qualified tax return privilege, its analysis and outcome carry little weight in this dispute.

Defendants' remaining arguments regarding the tax privilege focus on the information being relevant; however, relevance does not necessarily mean that the information goes to the essence of the lawsuit. ECF No. 84 at 8 ("Here, the gravamen of the lawsuit is inconsistent with the privilege. The information in the tax returns are relevant …"); *Bowerman*, 2013 WL 6057043, at *1–*2 (concluding information was relevant to issue of misclassification but denying request to compel production, explaining that the plaintiffs' "allegation that [defendant] willfully misclassified them as independent contractors does not place the contents of their tax returns and tax documents squarely into question."). Tax records "bear little if any relationship to determining" Plaintiffs' and Defendants' employment relationship because, "[w]hile evidence of the sources of class

---

[7] Of note, though Defendants reference decisions in this district, the only case they cite for that proposition is from the Northern District. Regardless of the district issuing the decision, however, the Court notes that such rulings are not binding.

members' income, as well as the costs, investments and expenses incurred in their businesses, may be relevant to a determination of whether they were misclassified, tax treatment is not a 'strong factor' in that determination and such source of income information could have been obtained through means other than their tax return." *Taylor*, 2014 WL 12560878, at *2 (quoting *Bowerman*, 2013 WL 6057043, at *2 n.5). Here, Defendants have had numerous ways to seek information from Plaintiff Snavely, including written interrogatories, RFPs, and a deposition.[8]

Defendants have not stated that Plaintiff Snavely refused to produce those documents. *See Ortolivo*, 2023 WL 8237265, at *2. In fact, Plaintiff Snavely has committed to produce all documents in his possession, custody, and control, and explained that he "will produce all responsive documents that he plans to rely on to prove his expense reimbursement claim in this case." ECF No. 84 at 81, 86 (responses to RFP Nos. 11 and 19). Plaintiff Snavely produced 521 pages in his first production and 292 pages in his second production. Email to Chambers (Aug. 11, 2025, at 3:47 PM); Email to Chambers (Aug. 11, 2025, at 4:02 PM). The 814 pages produced is much more than the first two productions of the other plaintiffs. Email to Chambers (Aug. 11, 2025, at 3:47 PM) (as of August 8, 2025, Plaintiff Munoz produced 403 pages, Plaintiff Ruiz produced 27 pages, and Plaintiff Corona produced 566 pages). Further, it is evident to the Court that Plaintiff Snavely completed a substantial third production, raising his total pages produced to at least 1,369. *See* ECF No. 81 at 2 (requiring Plaintiffs to provide supplemental responses by August 19, 2025); ECF No. 84 at 12 (referencing production bates numbers of 816–46, 854–74, and 1110–1369). Thus, Defendants' argument that Plaintiff Snavely produced "a smattering" of documents is unpersuasive. *See* ECF No. 84 at 9; *see id.* at 12 (Plaintiffs assert that "Mr. Snavely produced substantial evidence of his business expenses"). Additionally, Plaintiff Snavely "was questioned by Defendants regarding those

---

[8] Plaintiffs note that "[a]t no point during his deposition did Defendants' counsel ask Mr. Snavely to identify his tax professional(s)." ECF No. 84 at 13.

invoices/receipts during his August 27, 2025, deposition[,]" so Defendants have had ample opportunity to question him under oath regarding his business activities. ECF No. 84 at 9, 12.

For these reasons, the Court finds that no exception to the tax return privilege applies here.[9]

## V. WHETHER PLAINTIFF SNAVELY SHOULD BE COMPELLED TO SUPPLEMENT OTHER RESPONSES

In a footnote, Defendants argue that "Plaintiff [Snavely] will need to materially supplement [his] responses [to RFP Nos. 14, 15, or 20] or if he cannot, produce his business' tax returns." ECF No. 84 at 9 n.4. In another footnote, Defendants argue that multiple Interrogatories require Plaintiff Snavely's accountant's identification. *Id*. at 5 n.3 (arguing that Interrogatories Nos. 1, 3,[10] 7, and 12 "sought the identification of Plaintiff [Snavely]'s accountant"). To the extent that Defendants are seeking to compel responses to these RFPs or Interrogatories,[11] the Court declines to do so. *Hardiman v. Davis*, No. 3:23-cv-00584-MMD-CLB, 2025 WL 1135255, at *1 (D. Nev. Apr. 17, 2025) ("the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants'

---

[9] Additionally, the voluntary agreement by the other plaintiffs to provide their tax returns or accountants' contact information as a compromise does not create a similar obligation for Plaintiff Snavely.

[10] Interrogatory No. 3 was not presented to the Court in the parties' joint email, was not discussed during the discovery conference, and was not referenced in the Court's Order setting the briefing schedule for the instant motion.

[11] Plaintiff Snavely's responses to the Interrogatories are not attached as an exhibit or otherwise discussed in the instant motion. *See* ECF No. 84 at 110–121 (Exhibit D, Defendants' Interrogatories served on Plaintiff Snavely).

objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action").

Similarly, any requests for Plaintiff Snavely to supplement his responses to RFP Nos. 11 and 19 beyond producing tax returns are likewise denied. Though the Court agrees with Defendants that the information sought is relevant, the Court will not compel additional responses. As discussed above, Plaintiff Snavely's tax returns are privileged, and the Court finds that Plaintiff Snavely's supplemental responses are adequate. *See* ECF No. 84 at 81 ("Plaintiff will produce all responsive documents that he plans to rely on to prove his expense reimbursement claim in this case"); *id*. at 86 ("Plaintiff will produce all documents in his possession, custody, and control. … Plaintiff identified additional receipts/invoices following a diligent search and reasonable inquiry"); *id*. at 12 (production of at least 1,369 pages of documents).

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to compel. ECF No. 84.

**IT IS SO ORDERED.**

Dated: September 3, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge