UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TLALOC MUNOZ, MIGUEL RUIZ, EDGAR CORONA, and STEVEN SNAVELY, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EARTHGRAINS DISTRIBUTION, LLC and BIMBO BAKERIES USA, INC.,<br><br>Defendants. | Case No.: 22-cv-01269-AJB-AHG<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. No. 61)** |

Before the Court is a motion for summary judgment filed by Defendants Earthgrains Distribution, LLC and Bimbo Bakeries USA, Inc. (collectively "Defendants"), seeking to dismiss Plaintiffs Tlaloc Munoz, Miguel Ruiz, and Edgar Corona's (collectively "Plaintiffs") claims with prejudice. (Doc. No. 61.) Plaintiffs filed an opposition (Doc. No. 67), to which Defendants replied (Doc. No. 72). For the reasons set forth herein, the Court **DENIES** Defendants' motion.

## I.  BACKGROUND

### A.  Procedural Background

This wage-and-hour Private Attorneys General Act ("PAGA") and putative class action centers on the alleged misclassification of Plaintiffs as independent contractors instead of employees. (*See generally* Doc. No. 52, First Amended Complaint ("FAC").)

On September 13, 2024, the Court denied Defendants' motion to compel arbitration finding that the parties had not mutually assented to the arbitration clause and that, even if they had, the arbitration clause was unconscionable and could not be preserved via the contract's severability clause. (Doc. No. 18.) Defendants appealed. (Doc. Nos. 20; 21.)

On appeal, the Ninth Circuit affirmed, concluding that (1) "the Distribution Agreement is procedurally unconscionable to a moderate degree," (2) the non-mutual carve out for intellectual property claims, the shortened limitations period of covered disputes, and the liquidated damages clause are substantively unconscionable provisions, and (3) "the district court did not abuse its discretion when it refused to sever them." *Munoz v. Earthgrains Distribution, LLC*, No. 23-55818, 2024 WL 4144081 (9th Cir. Sept. 11, 2024). (*See also* Doc. No. 28-1.)

On May 2, 2025, Plaintiffs filed the FAC, alleging the following violations of California Labor Code and the Industrial Welfare Commission ("IWC") Wage Order 1-2001: (1) failure to reimburse expenses, (2) unlawful deductions from wages, (3) failure to provide accurate wage statements, (4) failure to provide overtime, (5) failure to provide meal periods, (6) failure to provide rest breaks, (8) unfair business practices in violation of California's Business & Professional Code, and (9) violation of PAGA. (*See generally* FAC.)

///
///
///
///
///

Defendants filed the instant motion for summary judgment, seeking to dismiss Plaintiffs' claims with prejudice based on the "Distributor's General Release" each signed upon selling their distribution rights.[1] (Doc. No. 61.)

### B.     Factual Background[2]

Plaintiffs each signed substantially similar Distribution Agreements with Defendants. (Doc. No. 61-2 at 6–34, Distribution Agreement ("DA") (signed by Munoz in 2014); Doc. No. 61-2 at 48–75, Distribution Agreement (signed by Ruiz in 2014); Doc. No. 61-2 at 91–121, Distribution Agreement (signed by Corona in 2019).) The Distribution Agreements sold Distribution Rights for a specific Sales Area to Plaintiffs.[3] The provisions setting forth the "relationship" between Plaintiffs and Defendants address Plaintiff's Distribution Rights and purported status as independent contractors. (*Id.* art. 2.1–2.2.) With regard to the former, the Distribution Agreement provides:

> DISTRIBUTION RIGHTS. BAKERY hereby recognizes DISTRIBUTOR's ownership of Distribution Rights which ownership shall continue until the Distributor Rights are sold pursuant to the terms of this Agreement. DISTRIBUTOR must operate according to the terms of this Agreement. **Any termination of this Agreement requires DISTRIBUTOR, or BAKERY for the account of DISTRIBUTOR, to sell the Distribution Rights pursuant to the terms of this Agreement**.

---

[1]     The instant motion requests that "the Court enter summary judgment in [Defendants'] favor on all of Plaintiffs' claims and thus dismiss this action, in its entirety, with prejudice." (Doc. No. 61-1 at 18.) However, in opposition, Plaintiffs identify that Defendants do not put at issue Plaintiff Steven Snavely's claims and do not address the PAGA cause of action, which Plaintiffs assert cannot be resolved privately. (Doc. No. 67 at 7 n.2, 30.) In reply, Defendants concede that if the Court grants their motion, Snavely's claims would remain along with the representative PAGA claims. (Doc. No. 72 at 2.)

[2]     Defendants include a Separate Statement of Uncontroverted Facts. (Doc. No. 61-3). As Plaintiffs note (*see* Doc. No. 67-3 at 2), Defendants' submission violates the undersigned's Chambers Rules. *See* J. Battaglia's Civ. Case Proc. § III.F. As Defendants did not request, nor did the Court grant, leave to file a separate statement of facts, the Court does not consider it in rendering this decision.

[3]     "Distribution Rights" are "the exclusive right to sell Products to Outlets in the Sales Area by Direct Store Delivery, or other manner if expressed in Schedule B, which rights have been purchased by DISTRIBUTOR as evidenced by a bill of sale, or have been granted by BAKERY to DISTRIBUTOR as evidenced in a writing signed by BAKERY in which BAKERY expressly grants 'equity' distribution rights to DISTRIBUTOR." (DA art. 1.1(d).) A "sales area" is defined as "that geographic area specifically described in Schedule A" of the applicable Distribution Agreement. (*Id.* art. 1.1(j).)

(*Id.* art. 2.1 (emphasis added).)

Pursuant to the Distributions Agreements, Plaintiffs were permitted to sell their Distribution Rights "in whole or part . . . provided that any such sale [is] subject to (1) the approval of [Defendants] . . . and (b) a right of first refusal by [Defendants] on the same terms and conditions offered to [Plaintiffs] by a bona fide purchaser[.]" (*Id.* art. 9.1.) The Distribution Agreements further set forth the following provision governing any such sale:

> SALE DOCUMENTS. **Upon the sale by or for the account of DISTRIBUTOR as described in this Article, DISTRIBUTOR must execute an appropriate bill of sale to the purchaser, and a general release terminating, canceling and surrendering DISTRIBUTOR's rights under this Agreement and releasing any and all claims against BAKERY and its affiliates and its and their officers, directors, shareholders, employees, successors and assigns arising under or out of or in any way related to this Agreement**, and BAKERY agrees to enter into a new Distribution Agreement with the purchaser in the form of agreement then being used by BAKERY.

(*Id.* art. 9.6 (emphasis added).)

All three Plaintiffs sold their Distribution Rights, at which time they executed both a Bill of Sale and the Distributor's General Release ("Release"). (*See* Doc. No. 61-2 at 45–47, Distributor's General Release ("Release") (signed by Munoz on March 10, 2019); Doc. No. 61-2 at 88–90, Distributor's General Release (signed by Ruiz on November 10, 2019); Doc. No. 61-2 at 133–35, Distributor's General Release (signed by Corona on January 30, 2022); Doc. No. 61-2 at 41–44, Bill of Sale (selling Munoz's Distribution Rights to Lucloks Killer Bread Corp. on March 10, 2019, for $145,987.00); Doc. No. 61-2 at 82–84, Bill of Sale (selling a portion of Ruiz's Distribution Rights to Corona on November 10, 2019, for $28,460.00); Doc. No. 61-2 at 85–87, Bill of Sale (selling a portion of Ruiz's Distribution Rights to Avelee Incorp. on November 10, 2019, for $108,601.00); Doc. No. 61-2 at 128–29, Bill of Sale (selling a portion of Corona's Distribution Rights to Defendants on April 19, 2020, for $15,000.00); Doc. No. 61-2 at 130–32, Bill of Sale (selling Corona's remaining Distribution Rights to A&J Family Bread Co. on January 30, 2022, for $99,607.00).)

Pursuant to the Release, Plaintiffs agreed to receive "One Dollar ($1.00) and other good and valuable consideration" in exchange for "release[ing] and dischar[ing] RELEASEE [(Defendants)] from each and all of the following: a) any claim, cause of action, right or interested of [Plaintiffs] and its owners/members arising out of [Plaintiffs'] ownership of certain Distribution Rights[.]" (Release at 46.) The Release includes an express waiver of California Civil Code § 1542:

> RELEASOR [(Plaintiffs)] for itself and its owners/members voluntarily and knowingly waives, relinquishes and abandons each and every right, protection and benefit under Section 1542 of the Civil Code of the State of California, as well as under any other statutes or common law principles of similar effect to said Section 1542, whether now or hereinafter existing under the laws of California or any other applicable federal or state law with jurisdiction over the parties' relationship. In making this voluntary express waiver, Distributor/Franchisee acknowledges that claims or facts in addition to or different from those which are now known or believed to exist with respect to the matters mentioned herein may later be discovered and that it is Distributor Franchisee's intention to hereby fully and forever settle and release any and all matters, regardless of the possibility of later discovered claims or facts. RELEASOR acknowledges and agrees that the foregoing waiver of Section 1542 is an essential, integral and material term of this Release.

(*Id.* at 46–47.)

## II.   LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007).

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. at 251–52 ("In essence, though, the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

## III.   DISCUSSION

The issue before the Court is narrow: Defendants seek summary judgment on the basis that the Releases signed by Plaintiffs are enforceable and bar the claims at issue. (*See generally* Doc. Nos. 61-1; 72.) Plaintiffs oppose Defendants' motion, asserting the Releases are unenforceable under California law. (*See generally* Doc. No. 67.) Defendants do not seek summary judgment on the merits of Plaintiffs' claims. (Doc. No. 72 at 5; *see generally* Doc. No. 61.)

### A.   Party Arguments

The parties' arguments are fundamentally premised on opposite responses to the following question: whether the Releases are prospective waivers.

Defendants' arguments regarding scope and enforceability of the Releases are built on the premise that the Releases were signed at the termination of the parties' relationship and, thus, are not prospective. (*See generally* Doc. Nos. 61-1; 72.) Regarding scope, Defendants assert that the current claims fall within the bounds of the Releases because the Releases include an express waiver of California Civil Code § 1542. (Doc. No. 61-1 at 10–11.) Regarding enforceability, Defendants argue that Plaintiffs received valuable consideration, namely the ability to sell Distribution Rights to a third party for financial benefit. (*Id.* at 10.) Defendants also assert that the Releases were not obtained through fraud, deception, misrepresentation, duress, or undue influence. (*Id.* at 11–12.) Finally,

Defendants argue the Releases are not barred by California law because there is a bona fide dispute over whether the wages are due, and no other provision separately prohibits the release of Plaintiffs' expense claim. (*Id.* at 12–17.)

However, Plaintiffs argue that, although the Releases themselves were signed at the termination of the parties' relationship, Plaintiffs' signing of the Releases was mandated by the Distribution Agreements which were executed at the *beginning* of the parties' relationship. (*See generally* Doc. No. 67.) As such, Plaintiffs argue that the Releases are unenforceable under California law because (1) they are impermissible prospective waivers of employment rights and (2) they are unconscionable, just like the arbitration provision. (*Id.* at 14–26.) Additionally, Plaintiffs argue that there was no bona fide dispute over *past* wages when Plaintiffs agreed to waive future claims at the signing of the Distribution Agreements. (*Id.* at 26–30.)

**B.     Distribution Agreements Make the Releases Prospective**

Defendants assert that "Plaintiffs did not prospectively waive their wage claims," but rather "[t]hey simply acknowledged in the D[istribution Agreement] that if they chose to sell their distribution rights (a separate, voluntary transaction), they would execute a bill of sale and a general release." (Doc. No. 72 at 8.) To support this stance, Defendants then rely on case law where plaintiffs were made aware in advance that possible severance benefits would require a release and, once later executed at termination of the employment relationship, those releases were deemed enforceable by the courts. (*Id.* at 8–9 (collecting cases); *see also* Doc. No. 61-1 at 9–11, 13–17.)

Defendants' analogizing Distribution Rights to severance benefits is inapposite. In severance cases where the benefits were not otherwise earned, the plaintiffs had the choice *after* ending their employment to receive a benefit upon execution of a release or sue without signing a release. *See, e.g.*, *Jimenez v. JP Morgan Chase & Co.*, No. 08-CV-0152 W (WMC), 2008 WL 2036896, *1, *3–4 (S.D. Cal. May 8, 2008) ("[T]his appears to be a typical situation where Plaintiff agreed to release certain claims in exchange for severance benefits not otherwise earned."); *Skrbina v. Fleming Cos., Inc.*, 45 Cal. App. 4th 1353,

1366–67 (1996); *Lu v. AT & T Servs., Inc.*, No. C 10-05954 SBA, 2011 WL 2470268, *1, *3 (N.D. Cal. June 21, 2011); *Reynov v. ADP Claims Servs. Grp., Inc.*, No. C 06-2056-CW, 2007 WL 5307977 (N.D. Cal. Apr. 30, 2007); *Young v. AmeriGas Propane, Inc.*, No. 14-CV-00583-BAS RBB, 2014 WL 5092878, *1–2, *4–5 (S.D. Cal. Oct. 9, 2014).

Here, as Defendants state, "Plaintiffs had the choice to sue for alleged violations" *while still being required to perform on their contracts* "*or* sell their routes for tens of thousands of dollars and release all claims[.]" (*See* Doc. No. 72 at 8 n.6.) Under the circumstances, there is sufficient evidence to dispute whether the relationship between the parties could not end without Plaintiffs' signing the release or breaching the Distribution Agreement.

Defendants also rely on analogizing to cases where courts enforced releases executed after litigation commenced as a part of settlement agreements. (*See* Doc. No. 61-1 at 8–9, 14–15 (citing first *Gopal v. Yoshikawa*, 147 Cal. App. 3d 128, 130 (1983), then *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012)).) For instance, Defendants cite to *Aleman* to demonstrate both enforcement of settlements where there is a bona fide dispute over wages due and upholding the exchange of a right to a yet-vested contractual benefit as valid consideration for a general release. (Doc. No. 61-1 at 9, 14–15.) In *Aleman*, the plaintiff signed a "Release of Claims Agreement" while the lawsuit was pending that released the defendant from any and all claims, including the split shift pay and reporting time claims at issue, in exchange for the right to exercise long-term incentive awards. *Aleman*, 209 Cal. App. 4th at 564–65. In contrast to the *Aleman* plaintiff who released claims *after* the events triggering the injury occurred, Plaintiffs here were contractually obligated by the Distribution *Agreement* to release any potential claims *before* any conduct and thus any claims could have arisen.

A few cases cited by Defendants involve a release executed to settle a prior action that courts found barred subsequent litigation arising from the same conduct. (*See, e.g.*, Doc. No. 61-1 at 10–11, 13 (citing first *Jefferson v. Cal. Dep't of Youth Auth.*, 28 Cal. 4th 299 (2002), next *Winet v. Price*, 4 Cal. App. 4th 1159 (1992), then *Aguilar v. Zep Inc.*, No.

13-CV-00563-WHO, 2014 WL 1900460 (N.D. Cal. May 12, 2014)).) However, once again, the conduct giving rise to the released claims occurred *before* the signing of any release. *See Jefferson*, 28 Cal. 4th at 302, 310 (holding that a release executed to settle a worker's compensation claim barred a later filed employment discrimination claim predicated on the same events and injury); *Winet*, 4 Cal. App. 4th at 1162–63, 1166–68 (holding that a release executed to settle a prior dispute over legal fees incurred drafting a partnership agreement barred a suit alleging malpractice in legal services, including the drafting of the agreement); *Aguilar*, 2014 WL 1900460, at *4–5 (finding that a release signed by a putative absent class member barred participation as the named plaintiff in a subsequent class action asserting the same wage-and-hour claims for the same time period). As with the other cases cited by Defendants, cases like *Jefferson*, *Winet*, and *Aguilar* fail to address the heart of the issue with the instant Releases—that they were contracted prior to any events giving rise to Plaintiffs' allegations. The Court agrees with Plaintiffs that, beyond analogizing to inapposite circumstances of post-conduct release, Defendants fail to meaningfully address how the instant circumstances *in substance* are the same.[4] (*See* Doc. No. 67 at 17.)

Defendants assert that the same releases have been upheld by other courts and, thus, this Court should uphold the instant Releases as well. (Doc. No. 61-1 at 12 (citing *Robins v. Bimbo Foods Bakeries Distrib., Inc.*, No. 12-5392, 2013 WL 5803783, at *6–7 (E.D. Pa.

---

[4] The only case Defendants address where a release was executed prior to occurrence of the allegedly injurious conduct is one proffered and rebutted in anticipation of Plaintiffs' arguments. (Doc. No. 61-1 at 17–18 (analyzing *Haitayan v. 7-Eleven, Inc.*, 762 F. App'x 393, 396 (9th Cir. 2019) (vacating the district court's denial of a preliminary injunction in a misclassification case)).) Addressing the likelihood of the franchisee plaintiffs' success on the merits, the Ninth Circuit "reject[ed] 7-Eleven's contention that the plaintiffs are contractually obligated to sign the general release because the franchise agreements they signed in 2004 said a general release would be required for renewal. 7-Eleven has not shown that this provision negates California's prohibition on contractual waiver of wage-and-hour claims." *Haitayan*, 762 F. App'x at 396. However, as noted by Defendants, the Ninth Circuit also "reject[ed] 7-Eleven's suggestion that the waiver is permissible as a settlement" because "[l]abor claims may be settled only by release and payment, which has not occurred here." Without additional facts, it is unclear whether the contractual rights conveyed by the franchise renewal contract were deemed insufficient by the Ninth Circuit or there was no payment at all.

Oct. 28, 2013); *Cobb v. George Weston Bakers Distrib., Inc.*, No. 10-676, 2012 WL 2344452, at *7 (D.N.J. June 19, 2012); Order, *Kharchyna v. Kuvshynova*, Index No. 711099/2021 (N.Y. Sup. Ct. Dec. 16, 2024), Doc. No. 62). However, none of the cases cited by Defendants apply California or Ninth Circuit law to the releases, none of the underlying complaints were predicated on misclassification claims as are here, and none of the plaintiffs challenged the validity of the releases as prospective due to the distribution agreements. Moreover, two of the cited opinions turn on fact-specific analysis of the precise circumstances pertaining to the applicable plaintiff's execution of a release. *See Robins*, 2013 WL 5803783, at *6–7 (analyzing whether elements of duress were present when Robins executed his release); *Cobb*, 2012 WL 2344452, at *4–7 (analyzing whether Cobb's release was knowing and voluntary considering *inter alia* his education, business experience, time to deliberate, access to counsel, opportunity to negotiate).

Considering the Releases in context with the Distribution Agreements and the circumstances presented in the instant action, the Court finds that the Releases are prospectively mandated by the Distribution Agreements which were executed at the beginning of the parties' relationship.

### C.   No Bona Fide Dispute Existed

Having found that the Releases were prospectively signed, the Court turns next to Defendants' assertions that a bona fide dispute existed permitting the enforceable release of potential Labor Code claims. (Doc. Nos. 61-1 at 12–17; 72 at 3–6.)

Pursuant to the California Labor Code,

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee. Violation of this section by the employer is a misdemeanor.

Cal. Lab. Code § 206.5(a). "Labor Code section 206.5 is to be read in light of Labor Code section 206." *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1586–87 (2009). "In

case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed." Cal. Lab. Code § 206(a). "Together, these statutes prohibit employers from coercing settlements by withholding wages concededly due." *Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 708 (2022), *aff'd,* 15 Cal. 5th 582 (2024) (citation omitted). However, "[w]hen a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee." *Watkins*, 172 Cal. App. 4th at 1587.

Because the Court has found that the Releases were prospectively contracted at the beginning of the parties' relationship, there could not have been a bona fide dispute over *past* wages. *Cf. Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803 (2009) ("[P]ublic policy is not violated by a settlement of a bona fide dispute over wages *already earned*. The releases here settled a dispute over whether Stix had violated wage and hour laws *in the past*; they did not purport to exonerate it from future violations. Neither did the releases condition the payment of wages concededly due on their executions. The trial court correctly found the releases barred the Chindarah plaintiffs from proceeding with the lawsuit against Stix.") (emphasis added); *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1117 (E.D. Cal. 2023) ("Indeed, since Prostek was signing on-boarding paperwork, it is unclear whether any wages would have been due at the time Prostek signed.").

### D.     California Prohibits the Release of Labor Claims Prospectively

As acknowledged by the California Supreme Court, "section 219 prohibits an employer and employee from agreeing, even voluntarily, to circumvent provisions of article I (consisting of §§ 200–243) of the Labor Code." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 619 (2009); *see also* Cal. Labor Code § 219(a) ("[N]o provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."). "[A]greements *prospectively* waiving an employee's rights under sections 201 and 202 to receive all his or her earned but deferred or unpaid wages constitute waivers

which section 219 renders illegal and unenforceable." *Schachter*, 47 Cal. 4th at 619 (cleaned up) (emphasis in original).

Having found that the Releases are prospective and, thus, that no bona fide dispute could have existed, the Releases are unenforceable under California law. Defendants assert that Plaintiffs "cite 'no authority to support' the idea that [the unfair competition claim] should be treated like a wage claim even though it is not one." (Doc. No. 72 at 3 (quoting *Thomas v. State Farm Ins. Co.*, 2020 WL 13517861, at *1 (S.D. Cal. Feb. 3, 2020), *aff'd*, 2021 WL 4596286 (9th Cir. 2021)).)[5] However, Plaintiffs' Unfair Competition Law claim is "predicated upon violations of California's Labor Code and Wage Order 1," specifically relisting all the actions Plaintiffs allege violate the California Labor Code and seeking an order enjoining Defendants from engaging in such allegedly unlawful business practices in the future. (FAC ¶¶ 4, 70–80.) Moreover, "[a]n injunction to require an employer to pay overtime, to afford meal breaks, or any other conduct mandated by the Labor Code is not subject to waiver by any private agreement." *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, 188 F. Supp. 3d 986, 996 (E.D. Cal. 2016).

### E. The Releases are Unconscionable

Finally, even if the Court had not found the Releases prospective, Plaintiffs argue the Court should find the Releases both substantively and procedurally unconscionable. (Doc. No. 67 at 22–26.)

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000) (noting unconscionability is "a

---

[5] The Court is baffled as to how *Thomas*, when read in full, is applicable to the instant action, let alone the arguments at issue. *See Thomas*, 2020 WL 13517861, at *1 ("reject[ing the p]laintiff's attempt to transform a question of law into a question of fact to justify further discovery" because the plaintiff "cites no authority to support that the covenant of good faith and fair dealing requires insurers to conduct legal assessments of the retroactive application of a statute, or that the mere possibility of an unfavorable assessment creates the type of factual dispute requiring further discovery under Rule 56").

principle of equity applicable to all contracts generally"). "Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *OTO, L.L.C.*, 8 Cal. 5th at 125; *see also Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C.*, 8 Cal. 5th at 125; *see also Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Assn.*, 41 Cal. App. 5th 753, 765 (2019) ("The paramount consideration in assessing [substantive] unconscionability is mutuality.") (cleaned up).

"[T]he two types of unconscionability 'need not both be present to the same degree.'" *Shroyer*, 498 F.3d at 981 (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006)). Rather a "sliding scale is invoked," such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

Defendants assert that "there is at most a 'low' degree of procedural unconscionability," because Plaintiffs were not surprised by the Releases. (Doc. No. 72 at 11.) However, absent from Defendants' reply is any discussion of oppression or the Ninth Circuit's findings of unconscionability on appeal. (*See* generally Doc. No. 72.) In fact, despite Defendants' failure to address it, the Ninth Circuit already found that the Distribution Agreement is "procedurally unconscionable to a moderate degree" because:

> [t]he Distribution Agreement was a contract of adhesion presented to Plaintiffs-Appellees on standardized, preprinted forms that were

>nonnegotiable. In addition, Plaintiffs-Appellees have not completed a college degree, and they did not have an opportunity to have an attorney review the Distribution Agreement. In contrast, Bimbo was a sophisticated company, being the "largest baking company in the United States," with the parent company generating billions of dollars in sales.

*Munoz*, 2024 WL 4144081, at *1.

Considering the Releases themselves, they are also contracts of adhesion presented to Plaintiffs on standardized, preprinted forms that were nonnegotiable. The same contrast in education and representation of the parties exists for the Releases as did for the Distribution Agreements. Thus, the Court similarly finds the same moderate degree of procedural unconscionability.

Turning to substantive unconscionability, the Ninth Circuit analyzed arbitration-related provisions of the Distribution Agreement, describing the Distribution Agreement as a "one-sided agreement" that was "exacerbated by the shortened limitation period of Covered Disputes" and a unilateral liquidated damages provision. *Munoz*, 2024 WL 4144081, at *1–3. The Ninth Circuit found that "[e]ach of these provisions is substantively unconscionable." *Id.* at *3. At issue here, the provision regarding sale of Distribution Rights and the corresponding Release are both similarly one-sided as Plaintiffs were required to execute the Releases in order to sell their Distribution Rights, the only claims released were those that could be brought by Plaintiffs against Defendants, and the Releases are expansive in nature covering "any and all claims" that "aris[e] under or out of or in any way relate[]" to the Distribution Agreements, including express waivers of California Civil Code § 1542, and the included confidentiality provision is one-sided. (*See* DA art. 9.6; Release 46–47.) None of these aspects demonstrate mutuality. In the Distribution Agreement, Defendants do "agree[] to enter into a new Distribution Agreement with the purchaser." (DA art. 9.6.) However, considering the additional rights Defendants retain regarding approval of any potential sale and right of first refusal, the terms are "unreasonably favorable" to Defendants, the more powerful party. *See OTO, L.L.C.*, 8 Cal. 5th at 125.

Accordingly, the Court finds that the Releases exhibit sufficient procedural and substantive unconscionability such that they are unenforceable to bar Plaintiffs' claims. *See, e.g., Total Vision, LLC v. Vision Serv. Plan*, 717 F. Supp. 3d 922, 935 (C.D. Cal. 2024)

## IV.   CONCLUSION

Based on the foregoing, because Defendants as the moving parties have failed to demonstrate they prevail as a matter of law, the Court **DENIES** Defendants' Motion for Summary Judgment. (Doc. No. 61.) The Court further **ORDERS**:

1. Any motion for class certification must be filed **no later than November 3, 2025**.

2. Any opposition to the motion for class certification must be filed **no later than November 24, 2025**.

3. Any reply must be filed **no later than December 8, 2025**.

4. A hearing on the motion for class certification is **SET** for **January 15, 2026**, at **2:00 PM** in Courtroom 4A before the undersigned.

5. Any request to modify the deadlines set herein must be filed in compliance with the Civil Local Rules and the undersigned Civil Case Procedures. Additionally, any such requests must address with specificity the cause justifying the request, supported by declarations.

**IT IS SO ORDERED.**

Dated: October 15, 2025

Hon. Anthony J. Battaglia
United States District Judge