UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

TLALOC MUNOZ, et al.,
Plaintiffs,
v.
EARTHGRAINS DISTRIBUTION, LLC and BIMBO BAKERIES USA, INC.,
Defendants.

Case No.: 22-cv-01269-AJB-AHG

**FINAL APPROVAL ORDER**

**(Doc. Nos. 123, 124)**

Before the Court is an unopposed motion for final approval of class action settlement (Doc. No. 123) and an unopposed motion for award of attorneys' fees, costs, and enhancement awards (Doc. No. 124), both filed by Plaintiffs Tlaloc Munoz, Miguel Ruiz, Edgar Corona, and Steven Snavely's ("Plaintiffs"). Defendants Earthgrains Distribution, LLC and Bimbo Bakeries USA, Inc. ("Defendants") filed a statement of non-opposition with regard to the motion for final approval. (Doc. No. 125.) The Court held a hearing on both motions. (Doc. Nos. 128.) No objections have been filed or otherwise raised. (*See* Doc. Nos. 123-1 at 6; 124-1 at 6; 128.) For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for final approval and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and service awards.

# I. BACKGROUND

This putative class and PAGA representative action centers on the alleged misclassification of Plaintiffs as independent contractors instead of employees. (*See generally* Doc. No. 110, Second Am. Compl. ("SAC").) Defendants Earthgrains Distribution, LLC and Bimbo Bakeries USA, Inc. (collectively, "Defendants") produce and distribute baked goods through a "Direct Store Delivery ('DSD') network." (SAC ¶¶ 15–17.) As a part of this DSD network, Defendants sell the distribution rights of specific geographic areas to "Independent Business Partners" ("IBPs"), who Defendants label as "independent contractors" and "franchisees." (*Id.* ¶ 18.) The IBPs execute contracts with Earthgrains called "Distribution Agreements" to purchase baked goods products from Earthgrains and sell those products to customers in a designated geographic area. (Doc. No. 123-1 at 7.) Each named plaintiff contracted with Defendants as IBPs: Munoz from approximately 2014 to 2019, Ruiz from approximately 2014 to 2019, Corona from approximately 2017 to January 2022, and Snavely from 2013 to the present. (*Id.*)

## B. Procedural Background

On May 18, 2022, Plaintiffs Munoz, Ruiz, and Corona sent a notice letter to the California Labor & Workforce Development Agency ("LWDA"), advising of their intent to pursue a representative PAGA action. (*Id.* at 7.) After Plaintiffs Munoz, Ruiz, and Corona filed the initial complaint in state court against Defendants (Doc. No. 1 at 19–35), Defendants removed the action to federal court and concurrently filed their answer (Doc. Nos. 1; 3).

On October 7, 2022, Defendants moved to compel Plaintiffs' claims to arbitration. (Doc. No. 9.) The Court denied Defendants' motion, finding that the parties had not mutually assented to the arbitration clause and that, even if they had, the arbitration clause was unconscionable and could not be preserved via the contract's severability clause. (Doc. No. 18.) Defendants appealed (Doc. Nos. 20; 21), and the Ninth Circuit affirmed (*see* Doc. No. 28-1).

On February 26, 2025, the parties attended an early neutral evaluation conference

with Magistrate Judge Allison H. Goddard. (Doc. No. 42.) When the case did not settle, Judge Goddard issued a scheduling order. (Doc. No. 43.) The parties commenced and engaged in extensive discovery, including propounding and responding to several rounds of written discovery, issuing subpoenas, producing combined tens of thousands of pages of responsive documents, and attending multiple conferences with Judge Goddard to resolve discovery disputes. (*See* Doc. Nos. 116-1 at 10; 57; 60; 75; 80.)

On May 2, 2025, Plaintiffs amended the complaint to add Plaintiff Snavely.[1] (Doc. No. 52.) Later that month, Defendants filed a motion for summary judgment, seeking to dismiss Plaintiffs' claims with prejudice based on the "Distributor's General Release" each signed upon selling their distribution rights. (Doc. No. 61.) After full briefing, the Court denied Defendants' motion. (Doc. No. 93.)

On November 5, 2025, the day after class certification discovery closed, the parties participated in a full-day mediation session with Michael Russell, continued to discuss potential resolution thereafter, and eventually accepted his mediator's proposal in December 2025.[2] (Doc. No. 123-1 at 7–8.) The parties executed a Memorandum of Understanding in January 2026 (*id.*), and Plaintiffs filed the Second Amended Complaint consistent with the Settlement (Doc. No. 110). The SAC asserts ten causes of action: (1) failure to reimburse business expenses (Cal. Lab. Code § 2802); (2) unlawful deductions from wages (Cal. Lab. Code §§ 221–223); (3) failure to provide accurate wage statements (Cal. Lab. Code § 226); (4) failure to pay overtime (Cal. Lab. Code § 510); (5) failure to provide meal periods (Cal. Lab. Code § 226.7); (6) failure to provide rest breaks (Cal. Lab. Code § 226.7); (7) failure to pay wages when due upon termination (Cal. Lab. Code §§ 201–203); (8) failure to pay sick leave wages (Cal. Lab. Code §§ 245–259); (9) unfair business practices (Cal. Bus. & Prof. Code §§ 17200 et seq.); and (10) penalties

---

[1] Prior to amending the complaint, Snavely sent notice to both LWDA and Defendants of intent to do so. (Doc. No. 116-1 at 9; Markley Decl. ¶ 4.)

[2] Between the mediation and when the parties accepted the mediator's proposal, they fully briefed a motion for class certification. (Doc. Nos. 95; 105; 106.)

under PAGA (Cal. Lab. Code §§ 2698 et seq.). (*See generally* SAC.)

Plaintiffs filed a motion for preliminary approval of the settlement (Doc. No. 116; *see also* Doc. No. 116-3, Stipulation of Class and PAGA Representative Action Settlement ("Settlement")), which Defendants did not oppose (Doc. No. 118). The Court granted Plaintiffs' motion and entered an order granting preliminary approval (the "Preliminary Approval Order"), which *inter alia* approved the Notice in form and content, appointed CPT Group ("CPT") as Settlement Administrator, set administrative dates, conditionally certified the class, and tentatively approved the Settlement. (Doc. No. 120.)

On October 15, 2026, Plaintiffs filed the instant motions for final approval and for award of attorneys' fees, expenses, and Plaintiffs' service payment. (Doc. Nos. 123; 124.) In support of these motions, Plaintiffs filed two declarations by Nicholas & Tomasevic, LLP ("N&T") partner Shaun Markley (Doc. No. 123-2, "Markley Decl."; Doc. No. 124-2, "Markley Fees Decl."), the declaration of N&T partner Craig M. Nicholas (Doc. No. 124-7), the Settlement Administrator's declaration (Doc. No. 123-5, Decl. of Laura Singh ("CPT Decl.")), declarations by each named Plaintiff (Doc. Nos. 123-6, Decl. of Tlaloc Munoz ("Munoz Decl."); 123-7, Decl. of Miguel Ruiz ("Ruiz Decl."); 123-8, Decl. of Edgar Corona ("Corona Decl."); 123-9, Decl. of Steven Snavely ("Snavely Decl.")), and documentation in support of the fees motion, including itemized billing records (Doc. No. 124-3), attorney costs (Doc. No. 124-4), and settlement administration costs (Doc. No. 123-5 at 60–62). Counsel also proffer declarations of three employment law litigators who practice in this district in support of the reasonableness of N&T's hourly rates. (Doc. Nos. 124-8, Decl. of Noam Glick ("Glick Decl."); 124-9, Decl. of Shani Zakay ("Zakay Decl."); 124-10, Decl. of Timothy G. Blood ("Blood Decl.").)

The Settlement Administrator's declaration details CPT's progress to date with notice and claims administration. Specifically, on July 20, 2026, CPT received the Court-approved text for the Notice Packet from Counsel and CPT prepared a draft Notice Packet in English and Spanish which was approved by all parties. (CPT Decl. ¶ 3.) On March 24, 2026, CPT received the Class Data from Defendant, which contained *inter alia* the name,

dates of contracting, and contact information for 296 Class Members, of whom 262 are also PAGA Members. (*Id.*) On August 7, 2026, CPT located seventeen new or updated addresses by conducting a National Change of Address search. (*Id.* ¶ 4.) On August 13, 2026, the Notice Packets were mailed via U.S. First-Class mail and via e-mail in English and Spanish to all Class Members. (*Id.* ¶¶ 5–6.) A total of 16 emails were undeliverable resulting in a 94.57% delivery rate. (*Id.* ¶ 6.) Every member received notice through some manner of communication, whether it be e-mail, post, or both. (Doc. No. 128.) Since going live, the settlement website received 1,300 unique visits and the toll-free line received 147 calls. (CPT Decl. ¶ 21.)

On September 4, 2026, CPT sent a reminder email with a 100% delivery rate to 100 Current IBP Class Members who had not yet signed the updated Arbitration Agreement as of that date. (*Id.* ¶ 7.) On September 21, 2026, CPT completed 89 phone calls to Current IBP Class Members who had not yet signed the updated Arbitration Agreement as of that date, reminding them that their Arbitration Agreement remained outstanding. (*Id.* ¶ 8.) On October 1, 2026, CPT sent a second reminder email to seven Current IBP Class Members who had not yet signed the updated Arbitration Agreement as of that date, reminding them that their Arbitration Agreement remained outstanding and advising them of the extended response deadline of October 12, 2026. (*Id.* ¶ 10.) Further reminder messages were sent to the remaining Current IBP Class Members who had not yet completed a signed Arbitration Agreement via text message on October 5, 2026, and October 8, 2026, and via phone call on October 8, 2026. (*Id.* ¶¶ 11–13.) By November 12, 2026, all Current IBP Class Members had signed Arbitration Agreements. (Doc. No. 129, Further Supplemental Declaration of Shaun Markley ("2nd Suppl. Markley Decl."), ¶ 3.)

CPT received one request for inclusion in the class that, upon review, was denied because Defendants had no record of that individual having a Distribution Agreement with either Defendant or one of their affiliates and the individual did not provide any substantiating information. (CPT Decl. ¶ 9.) To date, there have been no disputes, no

written objections to the settlement, and no written requests for exclusion. (*Id.* ¶¶ 16–18; Doc. No. 127, Supplemental Declaration of Laura Singh ("Suppl. CPT Decl."), ¶ 4.)

The Court held a hearing on November 12, 2026. (Doc. No. 128.) At that time, there was one outstanding Current IBP Class Member who had not signed the Arbitration Agreement. (*Id.*) The parties agreed and the Court approved extending the deadline for the remaining Current IBP Class Member to sign the Arbitration Agreement to November 30, 2026, and thus receive an Individual Settlement Payment. (*Id.*) On November 17, 2026, Plaintiffs alerted the Court that the remaining Current IBP Class Member signed the Arbitration Agreement, resulting in a 100% participation rate among Current IBP Class Members.[3] (2nd Suppl. Markley Decl. ¶ 3.)

## II. TERMS OF THE PROPOSED SETTLEMENT

The primary terms of the Settlement are provided below:

### A. Settlement Amounts & Allocation

Defendants will pay a non-reversionary Gross Settlement Amount of $17,500,000. (Settlement § 3.3.) The Settlement Agreement contemplates the following allocations:

| **Component** | **Amount** | **Settlement Provision** |
|---|---|---|
| Gross Settlement Amount | $17,500,000.00 | 3.3 |
| Requested Attorneys' Fees (33.33%) | ($5,250,000.00) | 3.5.2 |
| Requested Litigation Costs | ($37,449.85) | 3.5.2 |
| Requested Enhancement Awards for Plaintiffs | ($60,000.00) | 3.5.1 |
| PAGA Payment | ($350,000.00) | 3.5.5 |
| Reserve Fund | ($200,000.00) | 3.5.6 |

[3] In light of Plaintiff Counsel's second supplemental declaration (Doc. No. 129), the Court **VACATES** the requirement for the parties to file a joint status report by November 30, 2026 (*see* Doc. No. 128).

| | | |
|---|---|---|
| Settlement Administration Costs | ($15,000.00) | 3.5.3 |
| **Net Settlement Amount** | **$11,587,550.15** | 1.25 |

Any fees, costs, enhancement awards, or administration costs that the Court does not award will become a part of the Net Settlement Amount. (*Id.* §§ 3.5.1–3.5.3.)

Each Participating Class Member[4] will receive an Individual Settlement Payment consisting of a "Minimum Payment" and a "Pro Rata Payment." (*Id.* § 3.5.4.) The "Minimum Payment" will "be calculated as fifteen percent (15%) of the Net Settlement Amount divided equally among all Participating Class Members." (*Id.*) Based on the current data, CPT estimates the Minimum Payment to be $5,872.07. (CPT Decl. ¶ 23.) The "Pro Rata Payment" will "be calculated by taking the remaining eighty-five percent (85%) of the Net Settlement Amount and dividing it among the Participating Class Members on a pro rata basis based on the Eligible Workweeks each Participating Class Member contracted with Defendants during the Class Settlement Period[.]" (*Id.* § 3.5.4.) CPT estimates the average Individual Settlement Payment to be $39,147.13, the highest payment to be $55,425.00, and the lowest estimated payment to be $5,995.64. (Suppl. CPT Decl. ¶ 6.)

The PAGA Payment ($350,000) consists of $262,500 as the LWDA PAGA Payment for penalties and $87,500 as the Individual PAGA Payments to be distributed to the PAGA members "based on a pro rata share based on the number of Eligible Pay Periods each PAGA Member contracted with the Released Parties during the PAGA Settlement Period[.]" (Settlement § 3.5.5.) CPT estimates the average Individual PAGA Payment to be $333.97, the highest payment to be $444.05, and the lowest estimated payment to be $3.55. (CPT Decl. ¶ 25.)

///

[4] "Participating Class Members" are those "Class Members who do not timely request to be excluded from the class portion of the settlement." (*Id.* § 1.31.)

Based on the final Class Data, assuming the Court grants all requests in full, the average Individual Settlement Payment will be over $39,000, with a range of $5,995.64 to $55,425.25, and the average Individual PAGA Payment will be approximately $333.97, with a range of $3.55 to $444.05. (CPT Decl. ¶¶ 23–25; Suppl. CPT Decl. ¶ 6.) Checks uncashed after 180 days go to the State Controller's Unclaimed Property Fund in the member's name. (Settlement § 4.10.) If more than $5,000 is left after the check-cashing period, a second pro rata distribution to Class Member will be issued; if less than $5,000 is left, then the residue will go to the *cy pres* recipient. (*Id.* § 4.12.) Because there have been no successful requests to join the class beyond the Class Data Defendants provided, the Reserve Fund should result in an average additional payment of roughly $675 to each Class Member. (Doc. No. 123-1 at 12.)

**B. Releases**

In exchange for Defendants' $17,500,000 payment, Class Members who do not opt out of the Settlement Class release "all federal, state and local law claims, rights, demands, liabilities, penalties and causes of action asserted against the Released Parties in the Action and/or that could have been asserted in the Action based upon the facts set forth in the Action and/or the LWDA letters (as amended) . . . under the laws of any jurisdiction where a given Participating Class Member lived or worked during any portion of the Class Settlement Period." (Settlement §§ 1.34, 3.7.2.) In addition to the above release, the Class Representatives agree to an additional "complete and general release to the maximum extent by law," including an express waiver of Section 1542 of the California Civil Code. (*Id.* §§ 1.8, 3.7.1.)

Finally, Participating Class Members who are Current IBPs[5] must execute the Arbitration Agreement in order to receive the Individual Settlement Payment. (*Id.* §§ 3.5.4,

---

[5] A "Current IBP" is an individual[] that, as of the date of preliminary approval, ha[s] a current, operative contract with either Defendant or one of their predecessors, subsidiaries, or affiliates for sales in sales areas in California or who were purchasing product in California or selling to customers in California." (*Id.* § 1.9.)

4.11.) The Arbitration Agreement is a version revised in an effort to eliminate the substantive issues Plaintiffs raised earlier in the case. (Doc. No. 116-1 at 12.) Current IBPs may execute the Arbitration Agreement on paper or electronically through the settlement website. (Settlement §§ 4.2.2–4.2.3.) "If a Current IBP does not execute the Arbitration Agreement within the Response Deadline, then their Individual Settlement Payment will be distributed to a *cy pres* charity Feeding San Diego." (*Id.* § 5.1.)

### C. Attorneys' Fees, Litigation Costs, and Service Awards

As permitted by the Settlement, Class Counsel is concurrently moving for fees and costs and the Class Representatives' enhancement awards. (Doc. No. 124.) The Settlement is not contingent upon approval of these requests. (*See* Settlement §§ 3.5.1 ("Any amount of the Class Representatives' Enhancement Awards that is not awarded by the Court shall be added to the Net Settlement Amount."), 4.8.4 ("Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid by Defendants to Class Counsel, or reducing the amount of the Enhancement Award paid to the Class Representative, shall constitute grounds for cancellation or termination of the Stipulation, or grounds for limiting any other provision of the Judgment.").)

## III. MOTION FOR FINAL APPROVAL

### A. Legal Standard

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)); *see also Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("[W]here the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing

inquiry than may normally be required under Rule 23(e).") (internal punctuation omitted).

**B. Class Certification**

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts "must pay undiluted, even heightened, attention to class certification requirements." *Staton*, 327 F.3d at 952 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

In the present case, the Court scrutinized the proposed Settlement Class pursuant to Rule 23(a) and 23(b)(3) before granting Plaintiffs' motion for preliminary approval and conditionally certifying the class for purposes of settlement. (Doc. No. 120 at 9–16.) The Court noted that the motion was light on analysis and specifically directed Plaintiffs to submit declarations averring to their lack of conflicts to support adequacy. (*Id.* at 12–13.) Plaintiffs now aver to no knowledge of any conflict of interest between themselves and the Class. (Munoz Decl. ¶ 5; Ruiz Decl. ¶ 5; Corona Decl. ¶ 5; Snavely Decl. ¶ 5.) The only change in circumstances identified is initially the parties approximated 290 Class Members; however, CPT identifies 296 Class Members, which further supports the numerosity requirement. (Doc. No. 123-1 at 8; CPT Decl. ¶¶ 3, 23.) Additionally, Plaintiffs provide more fulsome analysis of each factor of the superiority requirement. (Doc. No. 123-1 at 13–15.) Considering that Plaintiffs addressed the Court's concerns, no objections have been filed in response, and the only change in circumstances bolsters certification, the Court reaffirms and incorporates its prior analysis under Rules 23(a) and (b)(3) as set forth in its Preliminary Approval Order and finally certifies the Class for purposes of settlement.

**C. Adequacy of Notice**

Next, the Court must determine whether the class members received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As mentioned *supra* § I, the Court approved the proposed Class Notice Packet in plan, form, and content. (Doc. No. 120 at 33–34.) Plaintiffs filed a declaration by CPT, detailing the actions taken by the Settlement Administrator to provide notice in accordance with the Preliminary Approval Order. (*See* CPT Decl. ¶¶ 3–15.) Pursuant to the notice plan, the Settlement Administrator mailed and emailed Notice Packets via U.S. First-Class mail in English and Spanish to all class members. (*Id.* ¶¶ 5–6.) Combining both methods, 100% of the Class received notice in some form. (Doc. No. 128.)

Beyond the mandated notice, Defendants had their local sales teams delivered hardcopy reminders (Doc. No. 121 at 2–3), the parties moved the Court to extend the Response Deadline first to October 12, 2026 (Doc. No. 121; 122) and finally to November 30, 2026 (Doc. No. 128), and the parties had CPT send numerous additional reminders via multiple methods to those who had not yet signed the revised arbitration agreement (Doc. No. 123-1 at 9). Specifically, for Current IBP Class Members, in addition to the initial mail and email Notice, CPT sent a reminder email on September 4, 2026, a reminder phone call on September 21, 2026, a second reminder email on October 1, 2026, a text reminder on October 5, 2026, a second text and phone call reminder on October 8, 2026. (CPT Decl. ¶¶ 7–8, 10–13.) Through the extensive efforts of the parties, all of the 197 Current IBP Class Members timely signed Arbitration Agreements. (2nd Suppl. Markley Decl. ¶ 3; *see also* Doc. No. 123-1 at 9; Suppl. CPT Decl. ¶ 5.)

Having reviewed the declarations, both initial and supplemental, and the briefing (Doc. No. 123-1 at 15–16), the Court finds that the Settlement Administrator duly effectuated the court-approved Notice, and that Class Members received adequate notice of the Settlement.

**D. Fairness of the Settlement**

Next, the Court must determine whether the proposed settlement and notice are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2). "Under this standard, district

courts can neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Traditionally, courts in this circuit assess the fairness, reasonableness, and adequacy of a proposed Rule 23 class settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

**1. Rule 23(e)(2) Factors**

In its Preliminary Approval Order, the Court found that the Rule 23(e)(2) factors preliminarily weighed in favor of approving the Settlement. (*See* Doc. No. 120 at 18–26.)

However, the Court also expressed concern about insufficient justification provided for the requested amount of attorneys' fees and Plaintiffs' requested service awards. (*Id.* at 20–22, 25–26.) Considering that no pertinent facts the Court relied upon changed, and that the Settlement is not dependent on the Court approving the requested fees and incentive awards (*see* Settlement §§ 3.5.1, 4.8.4), the Court reaffirms and reincorporates its analysis finding the adequacy of relief, adequacy of representation, and the lack of collusion support the fairness, reasonableness, and adequacy of the Settlement.

**2. Additional Ninth Circuit Factors**

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the remaining factors traditionally considered by this Circuit. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

**i. Experience and Views of Counsel**

In its Preliminary Approval Order, the Court found the experience and views of counsel weighed in favor of approval. (Doc. No. 120 at 26–27.) As no changes to Class Counsel have occurred, no relevant facts have changed, and no objections to Class Counsel have been brought to the Court, the Court reaffirms and incorporates its analysis on this factor and finds this factor weighs in favor of settlement approval.

**ii. Presence of a Government Actor**

There is no government actor party to this action. However, CAFA requires that, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 588–

89 (N.D. Cal. 2015).

On May 1, 2026, CPT served CAFA Notice on the Attorney General of the United States and the Attorney General of California. (Doc. No. 123-1 at 10; CPT Decl. ¶¶ 27–28.) On September 23, 2026, Plaintiffs submitted the Settlement to the LWDA. (Doc. No. 123-1 at 10; Markley Decl. ¶¶ 2, 5.) No government actor has objected or otherwise responded. (Doc. No. 123-1 at 10.) Thus, the Court finds this factor weighs in favor of settlement.

**iii. Reaction of Class Members**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

Here, no objections to or requests to opt of the Settlement by Class Members have been received. (CPT Decl. ¶¶ 16–18; Doc. No. 123-1 at 19; Suppl. CPT Decl. ¶ 4.) The absence of objections and requests for exclusion weigh in favor of settlement. *See, e.g.*, *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.").

**3. Conclusion**

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them weigh in favor of approval, the Court finds the Settlement fundamentally fair, adequate, and reasonable. *See Offs. for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation[.]").

### E. Fairness, Reasonableness, and Adequacy of Proposed Settlement of PAGA Penalties Claim

As the Settlement resolves Plaintiff's PAGA claims as well, the Court must analyze whether the Settlement fulfils the statutory requirements of PAGA and is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *See* Cal. Lab. Code § 2699(s)(2) ("The superior court shall review and approve any settlement of any civil action filed pursuant to this part."); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (identifying that district courts apply a "Rule 23-like standard" due to the absence of authority governing the standard for review and approval of PAGA settlements).

#### i. PAGA Statutory Requirements

In its Preliminary Approval Order, the Court confirmed the Settlement distributes the PAGA Allocation appropriately with $262,500 or 75% to be paid to the LWDA and $87,500 or 25% to be distributed to PAGA Members. (Doc. No. 120 at 29; Settlement §§ 1.29, 3.5.5.) *See also* Cal. Lab. Code § 2699(i) (2022) (amended July 1, 2024). Additionally, the Court noted that the Settlement Agreement and Notice both clearly state that PAGA Employees cannot opt out from settlement of the PAGA Claims. (Doc. No. 120 at 29–30; *see also* Settlement § 3.5.5; Notice § 7.) *See also Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009) ("Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) ("Thus, in a lawsuit which asserts a PAGA claims and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement."). The final statutory requirement is that the proposed settlement must be sent to the LWDA at the time it is submitted to the court for approval. Cal. Lab. Code § 2699(s)(2). Here, Plaintiffs submitted the Settlement to the LWDA on September

23, 2026, prior to filing the instant motion in compliance with the statute and the Settlement. Accordingly, the Court finds that Plaintiff has complied with PAGA's statutory requirements.

**ii. Fairness, Adequacy, and Reasonableness of PAGA Allocation**

"[W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *Haralson*, 383 F. Supp. 3d at 971 (quoting *O'Connor*, 201 F. Supp. 3d at 1133).

Although the PAGA Allocation overall represents 2% of the Gross Settlement Amount (Doc. No. 123-1 at 21), the average Individual PAGA Payment is estimated to be $333.97 (CPT Decl. ¶ 25). Though the percentage is low, the average payment is significantly higher than those other courts have approved. *See e.g.*, *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving a PAGA apportionment of 0.67% of the gross settlement fund because the LWDA did not object); *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2024 WL 4994339, at *17 (S.D. Cal. Dec. 5, 2024) (approving a PAGA allocation constituting approximately 1% of the maximum settlement fund); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *2 (N.D. Cal. Aug. 25, 2017) (approving allocation of $5,000, or approximately 1%, for PAGA claims out of the $370,000 total settlement fund); *Alcala v. Meyer Logistics, Inc.*, No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA allocations between 0% and 2% of the gross settlement amount). Moreover, considering that all PAGA Members are also Class Members (Doc. No. 123-1 at 21), the Settlement ensures that PAGA's interests are satisfied given the difficulties Plaintiff would have in litigating this case through trial and given the parties' negotiation efforts. *See Haralson*, 383 F. Supp. 3d at 972 ("[W]here the settlement

of Labor Code claims under Rule 23 provides 'robust' relief to the class, it supports a greater reduction in PAGA penalties.").

As such, the Court finds the PAGA Allocation to be fair, adequate, and reasonable, considering it in relation to the Class recovery and to other approved PAGA Settlements, and considering neither the LWDA nor any PAGA Employees have objected.

**iii. Conclusion**

Based on the foregoing, the Court finds the Settlement meets PAGA's statutory requirements and is fair, adequate and reasonable.

**F. *Cy Pres* Recipient**

"[*C*]y *pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members" meaning that it "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* at 821(cleaned up).

The Settlement Agreement identifies Feeding San Diego as the *cy pres* recipient. (Settlement §§ 4.12, 5.1.) Distribution to the *cy pres* recipient will occur (1) if the Reserve Fund Residue does not exceed $5,000 or (2) if a Current IBP does not execute the Arbitration Agreement within the Response Deadline. (*Id.*) In the Preliminary Approval Order, the Court questioned whether Feeding San Diego has a substantial nexus to the instant employment misclassification suit or the objectives of the California Labor Code. (Doc. No. 120 at 28.)

The parties have since agreed to change the *cy pres* recipient to the University of San Diego ("USD") School of Law Workers Rights Clinic. (Doc. No. 123-1 at 20.) The Clinic, operating in collaboration with Legal Aid at Work, "provides free legal advice to low-income workers in San Diego County on a variety of employment law issues, including employee rights, unemployment benefits, and unpaid wages." (*Id.*; *see also*

Markley Decl. ¶ 4.) Plaintiffs assert that "[f]unding legal advice for local, low-income workers has a close nexus to this case in light of its core allegation that local workers were misclassified and denied basic Labor Code and other rights under California law." (Doc. No. 123-1 at 20.)

The Court finds the USD School of Law Workers Rights Clinic bears a substantial nexus to the interests of the class in advocating for their rights under the California Labor Code. *See, e.g.*, *O'Connor*, 2019 WL 1437101, at *13 (finding Legal Aid at Work a proper *cy pres* recipient for a employment misclassification suit brought pursuant to California law for providing the same services). Thus, the Court approves USD School of Law Workers Rights Clinic as the *cy pres* recipient.

**G. Settlement Administration Costs**

Per the terms of the parties' proposed Settlement and the Preliminary Approval Order, CPT was approved as the Settlement Administrator. (Settlement § 1.41; Doc. No. 120 at 33.) Initially estimating $16,000.00 in administration costs (Settlement § 3.5.3; Doc. No. 120 at 33), Plaintiffs state "CPT will charge $15,000 in total, which covers both the costs incurred to date and the estimated costs to complete administration." (Doc. No. 123-1 at 23). As ordered by the Court, CPT provided an itemized invoice with actually incurred and estimated remaining costs generated on October 13, 2026. (Doc. No. 123-5 at 60–62.) The invoice reflects an actual balance of $22,464.64, to which CPT applied a "courtesy discount" of $7,464.64. (*Id.* at 62.)

Having reviewed the itemized invoice and considering that the requested amount reflects a discount both of the actual costs incurred and from the amount preliminarily approved, the Court concludes the Settlement Administrator's costs are fair and reasonably incurred for the benefit of the class up to the requested $15,000.00. *See, e.g.*, *Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL 8790268, at *6, *12 (S.D. Cal. Dec. 19, 2023) (approving $14,370.72 in administration costs where notice was provided to 729 class members in an employment misclassification suit); *Nguyen v. Westlake Servs. Holding Co.*, No. 8:23-CV-00854-FWS-ADS, 2025 WL 2087575, at *9, *12 (C.D. Cal.

Jan. 27, 2025) (approving $24,996.63 in settlement administration costs where notice was provided to 133 class members).

### H. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval.

## IV. MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD

Plaintiffs filed the instant motion seeking an award of $5,250,000.00 (30% of the common fund) for attorneys' fees, reimbursement of $37,449.85 for litigation costs incurred, and a service award of $15,000.00 for each named Plaintiff, all to be paid from the Gross Settlement Amount. (Doc. No. 124.) Defendants filed no opposition, and no Class Members have objected. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for attorneys' fees, litigation costs, and service awards.

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

### B. Attorneys' Fees

First, Class Counsel seek a combined $5,250,000.00 (30% of the Gross Settlement Fund) in attorneys' fees, which Counsel argue is reasonable under either the percentage-of-fund method or the lodestar method. (Doc. No. 124-1 at 11–19.)

#### 1. Legal Standard

"In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).

///

"Under the percentage-of-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Stanger*, 812 F.3d at 738 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "The benchmark percentage is 25%, but, similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.* ("*In re Apple*"), 50 F.4th 769, 784 (9th Cir. 2022) (quoting *Kim*, 8 F.4th at 1181). "[I]n assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method," courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

"Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple*, 50 F.4th at 784. "Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger*, 812 F.3d at 739 (citation omitted)).

**2. Percentage-of-Fund Analysis**

Considering the circumstances of this case under the percentage-of-fund analysis, the Court finds Counsel's departure from the 25% benchmark to 30% reasonable.

First, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision*, 559 F. Supp. 2d at 1046. According to Plaintiffs, the Gross Settlement Amount ($17,500,000.00) represents approximately 27% of the potential exposure, which Plaintiffs argue is "within the range found reasonable by courts in this Circuit for similar cases." (Doc. No. 124-1 at 12.)

Second, representation carried a meaningful amount of risk considering that Class Counsel took this case on a contingency basis, actively litigated it for four years with no assurance of payment, and bore the burden of all costs and fees out-of-pocket, while having to turn down other, hourly work "that would have paid quicker or more sure money." (Doc. No. 124-1 at 13–14.)

Third, the request is on par with that of similar employment class actions. *See, e.g.*, *Yanez v. HL Welding, Inc.*, No. 20CV1789-MDD, 2022 WL 788703, at *12 (S.D. Cal. Mar. 15, 2022) ("The 33.33% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions.") (collecting cases); *Vallejo v. Sterigenics U.S., LLC*, No. 20-CV-01788-AJB-AHG, 2023 WL 8439560, at *6 (S.D. Cal. Dec. 5, 2023) (noting "[c]ourts in this Circuit have routinely authorized similar awards" when approving a 30% fee award) (collecting cases).

Finally, although a much weaker consideration, some courts have found an upward deviation from the 25% benchmark is supported where no class members object to the request. *See, e.g.*, *Cabrales*, 2025 WL 2098757, at *12. Here, Plaintiffs argue that "[t]he fact that no Class Member objected to this or any other aspect of the Settlement further supports the departure from the benchmark sought here." (Doc. No. 124-1 at 15.)

Based on the forgoing, the Court finds the upward departure from 25% to 30% a reasonable award under the percentage-of-fund analysis.

**3. Lodestar Cross-Check**

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 963–64). "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness'

factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]'" *Id.* at 941–42 (quoting first *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988) and then *Hanlon*, 150 F.3d at 1029). However, "adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger*, 812 F.3d at 738 (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

Here, "Class Counsel's current hourly rates are $950 for Craig Nicholas (31 years of practice), $875 for Alex Tomasevic (20 years), and $775 for Shaun Markley (13 years), all of whom are partners; $650 for Jake Schulte and $525 for Jordan Belcastro, associates with 13 and 6 years of practice respectively; and $275 for paralegals." (Doc. No. 124-1 at 16–17.) For reasonableness of these rates, Counsel notes "[e]very rate is below the rates in this Court's two most recent wage-and-hour fee decisions," and below the rates on the Laffey Matrix. (*Id.* at 17 (citing *Cabrales*, 2025 WL 2098757, at *13–14; *Morel v. HNTB Corp.*, No. 22-CV-00408-AJB-AHG, 2025 WL 1870758, at *12 (S.D. Cal. July 7, 2025)).) To further support their rates, Counsel proffered the declarations of "[t]hree experienced San Diego class action practitioners [who] confirm that Class Counsel's rates are in line with those charged by attorneys of comparable experience, skill, and reputation in the San Diego market." (*Id.* (citing Glick Decl. ¶¶ 3–13; Zakay Decl. ¶¶ 3–8; Blood Decl. ¶¶ 3–11).)

With regard to hours, "[t]hrough October 15, 2026, Class Counsel spent 2,660.3 hours on this case," with associates and paralegals 1,395.7 of those hours. (*Id.* at 17–18.) Counsel supports the expenditure of these hours with a detailed declaration (*see* Markley Fee Decl. ¶¶ 13–28) and an itemized billing record (Doc. No. 124-3).

Based on the hours and rates provided, awarding Class Counsel 30% of the Gross Settlement Fund reflects a multiplier of approximately 3.02 on their $1,735,995.00 lodestar. (Doc. No. 124-1 at 19.) The Ninth Circuit has recognized that multipliers generally range from 1 to 4. *Vizcaino*, 290 F.3d at 1051 n.6 (upholding a lodestar multiplier cross-check showing a multiplier of 3.65). "District courts within the Ninth Circuit

commonly apply multipliers in that range in California wage and hour class actions." *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1007 (N.D. Cal. 2025).

Based on review of Class Counsel's experience, the rates are reasonable for attorneys litigating wage-and-hour class actions in this district. Additionally, reviewing the billing records provided, the hours expended are reasonable. Although a positive multiple is applied, the complexity, duration, and results of the case in comparison with case law in the Circuit support the 3.02 multiplier. Together, the Court finds that the lodestar cross check supports the reasonableness of 30% award under the percentage-of-the-fund method. *See, e.g.*, *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *7 (S.D. Cal. Dec. 20, 2017) (finding an award of $4,865,000, which was approximately 35% of the $13.9 million common fund, reasonable).

**4. Conclusion**

The Court finds Plaintiffs' request for $5,250,000.00 (30% of the common fund) worth of attorneys' fees to be reasonable under the circumstances, given the records and declarations provided by Class Counsel, and considering the complex nature of a class action lawsuit, the favorable result obtained both monetary and otherwise, the lack of objections, and lodestar cross-check. Accordingly, the Court grants the requested attorneys' fees.

///

///

///

///

///

///

///

///

///

///

**B. Expenses**

Next, Class Counsel seek reimbursement of $37,449.85 in actually incurred litigation costs. (Doc. No. 124-1 at 19–21.) In support of this request, Counsel proffer a list of itemized costs:

| Category | Amount |
|---|---|
| Court reporters and deposition transcripts | $27,770.20 |
| Mediation (Michael Russell) | $5,300.00 |
| Filing, LWDA, and service fees; PACER charges | $1,814.45 |
| Copying, printing, postage, delivery, and document-production software | $1,097.55 |
| Letters of request (translation) | $915.20 |
| Travel and related costs for the Ninth Circuit argument | $552.45 |
| **Total** | **$37,449.85** |

(Markley Fee Decl. ¶ 38.)

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). "In assessing the reasonableness of the reimbursement request, the Court is 'reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question,' and 'the attorney is expected to absorb some of the cost of doing business as an attorney.'" *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)).

The requested costs are all commonly reimbursed in similar amounts in this Circuit. *See, e.g.*, *Cabrales*, 2025 WL 2098757, at *17 (finding reasonable *inter alia* $20,000 in mediation fees that assisted in settlement and $11,488.91 in court reporter services for a total of $179,769.00); *Heid v. CyraCom Int'l, Inc.*, No. 22-CV-01445-MMA-KSC, 2024 WL 4008650, at *13 (S.D. Cal. Aug. 30, 2024) (finding reasonable $31,110.36 in fees related to mediation, legal research, service of process, filing, travel, courier and copying).

Accordingly, the Court finds these costs were reasonably incurred in litigating this action for the benefit of the Settlement Class and are all commonly reimbursed in similar amounts.

**C. Class Representative Service Awards**

Finally, Plaintiffs seek an award $15,000 each for service as Class Representatives, totaling $60,000 in all. (Doc. No. 124-1 at 21–23.)

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Although "[i]ncentive awards are fairly typical in class action cases," they are discretionary. *Staton*, 327 F.3d at 958. In deciding whether to approve an incentive award, courts consider factors including "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947 (quoting *Staton*, 327 F.3d at 977); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (listing factors including risk to the representative, notoriety and personal difficulties encountered, amount of time and effort spent, duration of litigation, and personal benefit).

Here, each seek $15,000 as an incentive award, and each proffers a declaration to support his individual request, that describes the specific work they did, the estimated hours it took, and the risks they faced. (Doc. No. 124-1 at 22–23; *see also* Munoz Decl.; Corona Decl.; Ruiz Decl.; Snavely Decl.)

Additionally, in the Preliminary Approval Order, the Court raised concerns about why Snavely—who joined as a named plaintiff May 2, 2025, nearly three years after litigation was commenced by Munoz, Ruiz, and Corona—warranted the same service award for one-fourth of the time spent as a named plaintiff. (Doc. No. 120 at 33.) In the instant motion, Counsel explains that Snavely's contributions matched those of the other named plaintiffs because (1) he produced more pages of business records than any other Plaintiff, (2) he expended a comparable amount of time, and (3) as the only Current IBP

he was exposed to a heightened degree of perceived risk and provided a valuable perspective that aligned with the two-thirds of the Class who are also Current IBPs. (Doc. No. 124-1 at 23.)

Plaintiffs have provided information and made themselves available to Counsel for four years, expending at least 52 hours each. (Munoz Decl. ¶ 20 (58–68 hours); Ruiz Decl. ¶ 20 (52–61 hours); Corona Decl. ¶ 20 (54–64 hours); Snavely Decl. ¶ 17 (52–59 hours).) Moreover, the requests each are less than half the average Individual Settlement Payment and, when considered in total, constitute only 0.34% of the entire common fund. (Doc. No. 124-1 at 22–23.) Accordingly, the Court grants Plaintiffs' request for service awards. *See, e.g.*, *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 to each of five named plaintiffs, which in aggregate represented 0.3% of $25 million settlement); *Cabrales*, 2025 WL 2098757, at *17 (awarding $20,000 to two named plaintiffs, reflecting less than 1% of the $6,364,467.87 Maximum Settlement Amount in aggregate).

**D. Conclusion**

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion and **AWARDS** $5,250,000.00 of the common fund for attorneys' fees, $37,449.85 in litigation expenses, and $15,000 each to Munoz, Ruiz, Corona, and Snavely as service awards for serving as Class Representatives.

**V. CONCLUSION**

In conclusion, the Court **GRANTS** Plaintiffs' motion for final approval and motion for attorneys' fees, litigation costs, and service awards. Furthermore, the Court:

3. **CERTIFIES** the Settlement Class for settlement purposes;

4. **APPROVES** the Settlement, and all of its terms, with the University of San Diego School of Law Workers Rights Clinic as the *cy pres* recipient in place of Feeding San Diego;

5. **DIRECTS** the parties to effectuate the Settlement Agreement according to its terms, including *inter alia* that:

- CPT be paid $15,000.00 for its services rendered as Settlement Administrator;
- Nicholas & Tomasevic, LLP be paid $5,250,000.00 in attorneys' fees and $37,449.85 in litigation costs for their work as Class Counsel; and
- Plaintiffs Tlaloc Munoz, Miguel Ruiz, Edgar Corona, and Steven Snavely each be awarded $15,000.00 for service as Class Representatives;

6. **DIRECTS** the Clerk of Court to close the case.

**IT IS SO ORDERED.**

Dated: November 17, 2026

Hon. Anthony J. Battaglia
United States District Judge